## State v. Ball
*[Cite as 8 AOA 386]*

*Case No. 57707*
*Cuyahoga County, (8th)*
*Decided December 27, 1990*

*John T. Corrigan, Cuyahoga County Prosecutor, Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*James F. Shannon, 516 Standard Building, Cleveland, Ohio 44113, for Defendant-Appellant.*

MATIA, J.

Defendant-appellant, Mildon Ball, appeals from his conviction for the offense of possessing criminal tools. In addition, the appellant appeals from the judgment of the trial court which denied the appellant's motion to suppress. The appellant's appeal is well taken.

### I. THE FACTS
### A. THE INVESTIGATORY STOP AND WARRANTLESS SEARCH

On October 31, 1988, two members of the Cleveland Police Department were on patrol in the Outhwaite projects located at East 55 and Woodland Avenue. At 10:45 p.m., the police officers observed a van, which con-

tained two individuals (the appellant and George Chandler), parked in a vacant lot. Upon observing some movement in the van, the police officers ordered the appellant and George Chandler to exit the van and further conducted a search of the interior of the van. As a result of the search, a brown bag containing cocaine, talwin, needles, syringes and money was discovered between the front seats of the van.

## B. THE INDICTMENT

On December 14, 1988, the appellant was indicted by the grand jury of Cuyahoga County for one count of drug abuse (possession of cocaine) in violation of R.C. 2925.11, one count of drug abuse (possession of talwin) in violation of R.C. 2925.11, one count of drug law violation (persons who may sell, deliver, distribute and possess dangerous drugs) in violation of R.C. 4729.51, and one count of possessing criminal tools (syringes) in violation of R.C. 2923.24.

## C. THE ARRAIGNMENT

On December 22, 1988, the appellant was arraigned wherein a plea of not guilty was entered to all four counts of the indictment.

## D. THE HEARING ON THE MOTION TO SUPPRESS

On March 10, 1989, the trial court conducted a hearing with regard to the appellant's motion to suppress all evidence as seized by the Cleveland Police in conjunction with the charged offenses of drug law violations and possessing criminal tools. At the conclusion of the motion hearing, the trial court denied the appellant's motion to suppress.

## E. THE JURY TRIAL

On March 14, 1989, a jury trial was commenced with regard to the four counts of the indictment. At the conclusion of the trial, the jury found the appellant not guilty of drug abuse (possession of cocaine), not guilty of drug abuse (possession of talwin) and not guilty of drug law violation (persons who may sell, deliver, distribute and possess dangerous drugs). The jury did find the appellant guilty of the offense of possessing criminal tools (syringes).

## F. THE SENTENCE OF THE TRIAL COURT

On April 6, 1989, the trial court sentenced the appellant to incarceration within the Correctional Reception Center, Orient, Ohio, for a term of three years to five years.

## G. THE APPELLANT'S TIMELY APPEAL

Thereafter, the appellant timely brought the instant appeal from his conviction for the offense of possessing criminal tools and the denial of the motion to suppress.

## II. THE FIRST ASSIGNMENT OF ERROR

The appellant's first assignment of error is that:

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE EVIDENCE HAD BEEN OBTAINED AS THE RESULT OF AN UNREASONABLE INVESTIGATORY SEARCH AND SEIZURE IN VIOLATION OF APPELLANT'S RIGHTS UNDER ARTICLE I SECTION FOURTEEN OF THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

## A. ISSUE RAISED: TRIAL COURT IMPROPERLY DENIED THE MOTION TO SUPPRESS

The appellant, in his initial assignment of error, argues that the trial court erred in denying the motion to suppress. Specifically, the appellant argues that the investigatory stop conducted by the police was improper since there existed no specific and articulable facts to warrant a lawful investigatory stop.

This assignment of error is well taken.

## B. EVIDENCE ADDUCED AT THE MOTION TO SUPPRESS HEARING

As stated previously, the trial court conducted a hearing with regard to the appellant's motion to suppress. During the course of the hearing, testimony was adduced from one of the original police officers that conducted the warrantless search of the van in which the illegal drugs and contraband were discovered. Officer Gneu testified that:

1) Officer Gneu had been a police officer for twenty years and a member of the SWAT team for ten years (Tr. 18);

2) on October 31, 1988, Officer Gneu and his partner were assigned to patrol the Outhwaite Projects located at East 55 and Woodland (Tr. 19);

3) the purpose of the patrol was to conduct sweeps of the area in order to try and collect drug dealers (Tr. 19);

4) at approximately 10:45 p.m., a van was observed parked in a vacant field (Tr. 19, 20);

5) two individuals were observed moving around in the van (Tr. 20);

6) the two occupants of the van were ordered out, hand-cuffed and searched (Tr. 20, 21);

7) suspicious activity formed the basis for the investigatory stop and the warrantless search; and

8) a search of the interior of the van resulted in the discovery of a small brown bag which contained syringes, needles, pills and money (Tr. 24).

## C. TRIAL COURT'S DENIAL OF THE MOTION TO SUPPRESS

At the close of the hearing, the trial court denied the appellant's motion to suppress. The trial court based its denial of the motion to suppress upon the application of *State v. Bobo* (1988), 37 Ohio St. 3d 171.

## D. STANDARD FOR CONDUCTING A LAWFUL INVESTIGATORY STOP

In order to conduct a lawful investigatory stop, the investigating police officer must be able to point to specific and articulable facts which when taken together with rational inferences from those facts reasonably warrants the investigatory stop. *Adams v. Williams* (1972), 407 U.S. 143; *Terry v. Ohio* (1968), 392 U.S. 1. In addition, the Supreme Court of the United States, in *United States v. Cortez* (1981), 449 U.S. 411, examined the issue of a permissible investigatory stop arid held that:

"The idea that an assessment of the whole picture must yield particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions--inferences and deductions that might well elude an untrained person.

"***

"The second element contained in the idea that *an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing."* (Emphasis added.) United *States v. Cortez, supra,* at 419.

## E. NO BASIS FOR POLICE TO CONDUCT A LAWFUL INVESTIGATORY STOP

In the case *sub judice,* the trial court erred by denying the appellant's motion to suppress. The testimony of the police officer clearly failed to establish the existence of any specific and articulable facts which when taken together would have resulted in the inference that the appellant had been involved in any type of recognizable criminal activity. The fact that the appellant was observed sitting in a van, absent other specific facts or circumstances that inferred criminal activity, was not sufficient to warrant the initial investigatory stop.

## F. *STATE v. BOBO* NOT APPLICABLE

It must also be noted that the trial court's application of *State v. Bobo, supra,* to the case herein was in error. The Supreme Court of Ohio, in *State v. Bobo, supra,* established that an investigatory stop must be viewed in light of the totality of the surrounding circumstances. The circumstances cited in *Bobo* involved the following:

1) the area in which the investigatory stop occurred was an area of very heavy drug activity in which weapons were prevalent;

2) it was night time, when weapons could be easily hidden;

3) the investigatory officers had numerous years of experience in the surveillance of drug and weapons activity;

4) the investigating officers had knowledge of how drug transactions occurred in the area;

5) the investigating officers observed the defendant disappear and reappear from view;

6) the investigating officers were experienced in recovering weapons or drugs suggested that the defendant was attempting to conceal drugs or weapons; and

7) the investigating officers were away from the protection of their vehicle.

A review of the testimony adduced at the suppression hearing clearly reveals that there existed very few if any similarities with *Bobo.* In fact, the evidence and testimony adduced at the suppression hearing failed to establish that:

1) the area was heavily infested with drug and weapons activity;

2) the investigating officers were thoroughly experienced in the area of drugs and weapons arrests;

3) the investigating officers knew how drugs were sold in the area;

4) the investigating officers observed the appellant attempt to hide something in the van; and

5) the investigating officers were experienced in the recovery of weapons and drugs and that the movements of the appellant indicated an attempt to conceal drugs or weapons. Clearly, *State v. Bobo, supra,* as based upon the testimony adduced at the suppression hearing, was not applicable.

## G. CONCLUSION

Therefore, the trial court's denial of the appellant's motion to suppress was error and the appellant's first assignment of error is well taken. It should also be noted that the appellant's conviction for the offense of possessing criminal tools, as based upon the unlawfully seized syringes, needles, cocaine, talwin, and money must be vacated. Cf. *State v. Chandler* (November 22, 1989), Cuyahoga App. No. 57731, unreported.

## III. THE SECOND AND THIRD ASSIGNMENTS OF ERROR

Having a common basis in law and fact, the appellant's second and third assignments of error shall be considered simultaneously.

The appellant's second assignment of error is that:

"THE APPELLANT WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WHERE THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A) WHERE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE THAT APPELLANT, A PASSENGER IN THE CODEFENDANT'S VEHICLE, AIDED AND ABBETTED (SIC) THE CODEFENDANT IN POSSESSION OF CRIMINAL TOOLS."

The appellant's third assignment of error is that:

"THE APPELLANT WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WHERE THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A), WHERE APPELLANT'S CONVICTION FOR POSSESSION OF CRIMINAL TOOLS WAS NOT SUPPORTED BY EVIDENCE SUFFICIENT TO PROVE EVERY ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT."

## A. ISSUE RAISED: TRIAL COURT IMPROPERLY DENIED MOTIONS FOR ACQUITTAL

The appellant, through his second and third assignments of error, argues that the trial court erred in denying the two Crim. R. 29(A) motions for acquittal. Specifically, the appellant argues that the trial court erred in denying the motions for acquittal as to the charged offense of possessing criminal tools. The appellant's second and third assignments of error are not well taken.

## B. SECOND AND THIRD ASSIGNMENTS OF ERROR ARE MOOT

As dealt with in the appellant's first assignment of error, the failure of the trial court to grant the appellant's motion to suppress resulted in an improper conviction and mandates a reversal of the appellant's conviction for the offense of possessing criminal tools. Thus, in effect, the appellant's second and third assignments of error are moot.

## C. THIS COURT IS REQUIRED TO REVIEW MOOT ASSIGNMENTS OF ERROR

This court, however, may not treat an assignment of error as being "moot" or "irrelevant" after deciding the appeal on another issue. *Criss v. Springfield Twp.* (1989), 43 Ohio St. 3d 83. A review of the appellant's second and third assignments of error shall be made assuming that the appellant's motion to suppress was properly denied by the trial court.

## D. CRIM. R. 29(A) MOTION FOR ACQUITTAL

Crim. R. 29(A), which deals with a motion for acquittal, provides that:

"*** The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

In addition, the Supreme Court of Ohio, in *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, established that a trial court shall not grant a Crim. R. 29(A) motion for acquittal where the evidence demonstrates that reasonable minds can reach different conclusions with regard to whether the elements of an offense have been proved beyond a reasonable doubt.

"Pursuant to Crim. R. 29(A), the court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman, supra,* syllabus.

### E. TRIAL COURT PROPERLY DENIED MOTIONS FOR ACQUITTAL

Herein, the record clearly reveals that the state of Ohio presented sufficient evidence at trial so that reasonable minds could reach different conclusions as to whether each and every element of the offense of possessing criminal tools had been proved beyond a reasonable doubt.

Thus, assuming that the appellant's motion to suppress was properly denied by the trial court, the appellant's second and third assignments of error are not well taken.

### IV. THE FOURTH ASSIGNMENT OF ERROR

The appellant's fourth assignment of error is that:

"THE APPELLANT WAS ERRONEOUSLY CONVICTED AND SENTENCED FOR THE CRIME OF POSSESSION OF CRIMINAL TOOLS WHERE THE CONDUCT ALLEGED ALSO FALLS UNDER A SPECIFIC STATUTORY PROVISION FOR POSSESSING DRUG ABUSE INSTRUMENTS THE APPELLANT IS ENTITLED TO BE SENTENCED FOR THE LESSER OFFENSE."

### A. ISSUE RAISED: APPELLANT IMPROPERLY CONVICTED OF POSSESSING CRIMINAL TOOLS

The appellant, in his fourth assignment of error, argues that he was improperly convicted and sentenced for the offense of possessing criminal tools vis-a-vis syringes as found in a brown paper bag. Specifically, the appellant argues that he could only be convicted and sentenced for the offense of possessing drug abuse instruments pursuant to R.C. 2925.12 as a result of possession of the syringes.

This assignment of error is well taken.

### B. ASSIGNMENT OF ERROR IS MOOT BUT REVIEW IS MANDATED

As dealt with in the appellant's second and third assignments of error, the finding that the trial court erred in denying the appellant's motion to suppress has rendered the fourth assignment of error moot. However, pursuant to the application of *Criss v. Springfield Twp., supra,* this court must review the appellant's fourth assignment of error.

### C. POSSESSION OF SYRINGES IS A MISDEMEANOR AND NOT A FELONY

The issue raised by the appellant, whether possession of syringes could only be brought as a misdemeanor violation of R.C. 2925.12, was addressed by this court in *State v. Chandler, supra.* This court held that possession of syringes could only result in a misdemeanor conviction pursuant to R.C. 2925.12 (possessing drug abuse instruments).

"Appellant is absolutely correct in his position that his alleged possession of syringes could not be punished as anything other than a misdemeanor under R.C. 2925.12 and could not constitute possession of criminal tools under R.C. 2923.24. Appellant rightly concludes that his conviction under R.C. 2923.24 must herefore be vacated.

"The statutes read in pertinent part as follows: ***

"In *State v. Volpe* (1988), 38 Ohio St. 3d 191, the Supreme Court discussed the two statutes and the narrower scope of R.C. 2915.01(A), which criminalized as a misdemeanor the possession of any gambling device with intent to engage in gambling activities. The defendants in *Volpe* had been convicted under R.C. 2923.24 (Possessing Criminal Tools). The Supreme Court ruled that such felony convictions under R.C. 2923.24 could not stand in light of the specific misdemeanor offense defined in R.C. 2915.02(A) (5). In reversing the convictions, the court stated: ***

"In *Volpe* the Supreme Court, in dicta, specifically referred to R.C. 2925.12 (Possessing Drug Abuse Instrument) as taking precedence over R.C. 2923.24. Further, and more importantly, the rationale of *Volpe* applies

completely to appellant's conviction. As in *Volpe,* we are dealing in the present case with a conflict between a general statute, R.C. 2923.24, and a special statute, R.C. 2925.12. In *Volpe,* as in the present case, the statutes are irreconcilable and provide 'different penalties for the same conduct.' *Volpe* at 193. Therefore, R.C. 2923.24 cannot take precedence over R.C. 2925.12, the later enacted more narrow statute. We agree in toto with the U.S. Magistrates following statement and adopt it as our holding. 'The ultimate holding of the Ohio Supreme Court must apply to this case, by simply substituting reference in the *Volpe* decision to R.C. 2915.02(A) (5) with reference to R.C. 2925.12 and reference to 'a gambling device' with reference to 'a syringe', so that the following rule would evolve: Given that the General Assembly clearly enacted [R.C. 2925.12(A)] to reach criminal possession and control of [a syringe] and classified such conduct as a misdemeanor of the [second] degree under [R.C. 2925.12(c)], we hold that R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling [a syringe].'" (Footnote omitted.) *State v. Chandler, supra,* at 4.

As in *Chandler,* the appellant herein was improperly convicted of the offense of possessing criminal tools (syringes) and was also improperly sentenced. The appellant's possession of syringes could have only resulted in a conviction for the offense of possessing drug abuse instruments in violation of R.C. 2925.11.

### D. CONCLUSION

Thus, the appellant was improperly convicted of the offense of possessing criminal tools in violation of R.C. 2923.24 and the appellant's fourth assignment of error is well taken. The judgment of the trial court, which denied the appellant's motion to suppress is reversed, the appellant's conviction for the offense of possessing criminal tools is vacated, and the matter is remanded to the trial court for further proceedings. Reversed and vacated.

NAHRA, J., concurs with concurring opinion.

KRUPANSKY, P.J., dissents with dissenting opinion.

NAHRA, J., concurring.

Defendant and his co-defendant, George P. Chandler were tried together. In *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, we held (1) the denial of the motion to suppress was error, and (2) defendant could not be convicted of the felony of possession of criminal tools under a general statute where the same conduct was governed by a special statute which made it a misdemeanor. As the facts here are exactly the same, the result cannot be otherwise.

KRUPANSKY, P.J., dissenting.

I respectfully dissent from the majority opinion since the police officers' limited search of the van encompassing the paper bag located in plain view in the front seat between the driver and passenger seat was entirely reasonable and appropriately conducted solely for the protection and safety of the police officers who performed the search.

Therefore, the limited search of the van was appropriate pursuant to the rationales and theories articulated in the following cases:

(1) As an investigative stop and limited protective search of a vehicle passenger compartment based on *Terry v. Ohio* (1968), 392 U.S. 1 and *State v. Bobo* (1988), 37 Ohio St. 3d 177.

(2) as a protective limited search of the areas of the vehicle in which a weapon could easily have been hidden conducted for the police officer's safety before releasing a suspect who could gain immediate control of a weapon located inside the vehicle pursuant to *Michigan v. Long* (1983), 463 U.S. 1032.

At the outset it is noted the case *sub judice* involves the propriety of an investigative stop and frisk rather than a question of probable cause. The concurring opinion attached enlightens us that the facts in the instant case are exactly the same as those in *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, unreported, in which this court reversed the codefendant van owner's conviction granting co-defendant's motion to suppress. Although I was not on the *Chandler* panel, I would apply the same rationale to *Chandler, supra,* in finding the search of the van reasonable since exactly the same facts were developed in the transcript common to both cases. I concur with only the thought

made in the concurring opinion that the facts are exactly the same in *Chandler* as in the case *sub judice,* therefore, the result should be the same. However, I do not believe just because the *Chandler* opinion was released first that the panel in the case *sub judice* should follow blindly and I believe an independent analysis is necessary. Hence, I would in effect also be dissenting from the *Chandler* opinion.

The Fourth Amendment to the United States Constitution provides that people are protected against *unreasonable* searches and seizures.

In the landmark decision of *Terry, supra,* the United States Supreme Court weighed the competing interests of personal privacy and crime detection by balancing and defining standards by which police detentions are tested in situations involving less than the probable cause required for a lawful arrest. Even a momentary or transient stop of an individual constitutes a seizure for Fourth Amendment purposes. *Terry, supra.*

The court in *Terry* stated as follows:

"*** And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one -- whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

"***

"[F]or there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" (Citations omitted.) *Terry, supra,* at 19, 20-21; see also *Adams v. Williams* (1972), 407 U.S. 143.

The Ohio Supreme Court has clarified this state's position regarding the standard governing investigative stops in the syllabus of *State v. Bobo* (1988), 37 Ohio St. 3d 177, as follows:

"1. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. *(State v. Freeman* [1980], 64 Ohio St. 2d 291, 18 O.O.3d 466, 414 N.E.2d 1044, paragraph one of the syllabus, approved and followed.)

"2. Where a police officer during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."

When the suspect is an occupant of an automobile, police may search those areas of the *passenger compartment which could contain a weapon* if police have a reasonable articulable suspicion the suspect is dangerous or may gain *immediate control of weapons. Bobo, supra; State v. Willingham* (Feb. 16, 1989), Cuyahoga App. Nos. 54767, 56464, unreported citing *Michigan v. Long* (1983), 463 U.S. 1032, 1039; *State v. Smith* (1978), 56 Ohio St. 2d 405. The search must be "strictly circumscribed by the exigencies which justify its initiation." *Terry, supra,* at 26.

The majority contends the stop and subsequent protective search of the van which defendant occupied was invalid and thus the "trial court's application of *State v. Bobo, supra* to the case herein was in error," since "there existed very few if any similarities with Bobo."

In order that the tests in *Terry, Bobo* and *Michigan v. Long* may properly be applied to the facts in the case *sub judice,* a chronological overview of the events of the night of October 31, 1988 is necessary:

(1) Officer James Gneu testified that at approximately 10:45 p.m. on October 31, 1988 he was on patrol doing a drug sweep of the Outhwaite projects, an area the citizens and councilmen were complaining was teeming with drug activity.

(2) Officer Gneu testified he and his partner observed a van "sitting next to a tree in a vacant lot with no other vehicles around" in "weeds" that "nobody under normal circumstances would normally park a car in there;" Gneu found this suspicious in itself. (Tr. 31).

(3) The officers observed two people in the van moving around.

(4) Officer Gneu testified he observed these two people through the front windshield of the van. As the officers approached Gneu testified the defendants saw them and then Gneu could see "moving around in the front seat, bending around and bending back towards the rear of the van." (Tr. 41,.) Gneu testified he was concerned defendants "dumped a gun" and he looked behind the seats for a gun. (Tr. 44.)

(5) Officer Gneu stated he approached the van with caution and had his gun drawn "in a ready position."

(6) Officer Gneu told defendants to exit the vehicle and conducted a pat-down of defendants in which no weapons were found.

(7) Officer Gneu then conducted a visual inspection of the front and back of the van in which no weapons were observed.

(8) Officer Gneu saw a brown bag in the front seat between the driver and passenger side, which, based on the officers' years of experience, he concluded could easily contain a weapon and the officer confined his search to that bag stating "that was my main reason for picking up the bag, to check that to make sure there wasn't a weapon inside!" (Tr. 54).

The trial court as the fact finder, was entitled to believe Officer Gneu's testimony. *State v. DeHass* (1967), 10 Ohio St. 2d 230.

The first prong of the analysis of *Terry* and *Bobo* mandates we inquire whether the officer's stop of defendants was "justified at its inception." *Terry, supra,* at 19, 20.

Based on the "totality of the circumstances" the similarities between the facts in the instant case and *Bobo* are clearly analogous.

The seven circumstances postulated in *Bobo* to justify the investigatory stop and subsequent limited protective search of defendant for safety reasons follow:

(1) the area was known to have heavy drug activity in which weapons were prevalent;

(2) it was nighttime, when weapons could easily be hidden;

(3) one of the officers who approached the vehicle had previously made about five hundred arrests for guns or drugs city-wide and over one hundred arrests in the area where defendant Bobo was parked;

(4) that officer knew how drugs were transacted in that area;

(5) that officer saw defendant Bobo bend down as if to hide something in his car;

(6) that officer's experience of recovering weapons or drugs suggested that defendant Bobo's gesture of ducking was to conceal a gun or drugs;

(7) the police were away from the protection of their vehicle when they approached defendant Bobo. See *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, unreported.

Importantly, the facts are incredibly analogous to those of the present case:

(1) The area known as the Outhwaite projects at East 55th and Woodland is an area known for drug activity and Officer Gneu testified the citizenry and council alike were clamoring for the drug activity in the area to be curtailed. Tr. 19).

(2) It was 10:45 p.m. (nighttime) when weapons could easily be hidden.

(3) Officer Gneu was a twenty-year veteran with the police force with ten years as a SWAT team member; he testified he was exposed to these circumstances "every day." (Tr. 33).

(4) Officer Gneu had experience in drug transactions. (Tr. 54).

(5) The officer saw movement "in the front seat, bending around and bending back towards the rear of the van" which he himself characterized as "suspicious." His concern was that "somebody dumped a gun" behind the front seat of the van.

(6) Officer Gneu's experience of recovering weapons or drugs suggested to him that "a lot of times" people "will conceal weapons inside a bag, thinking that somebody's not going to look there."

(7) Officer Gneu and his partner had both exited their vehicle when they approached defendant's vehicle and their backup unit had not, as yet, arrived.

The stop of defendants was absolutely justified as was the pat-down of defendant's outer clothing based on the totality of the circumstances. *Terry, supra; Bobo, supra; Freeman, supra.* Specific articulable facts existed to justify the stop of defendants. *Terry, supra.*

Officer Gneu testified as follows:

"Q. You said you watched the person on the driver's side. What was he doing?

"A. Just moving around in the front seat, bending around and bending back towards the rear of the van."

Although Officer Gneu did not articulate the exact words "as if to hide something in the back of the van," he did. say he flashed his light and looked around the seats "to see if somebody dumped a gun."

Officer Gneu testified on cross-examination he limited the scope of his search of the van to a visual observation being concerned with "weapons on the floor" and also "if there was anybody else in there." (Tr. 45).

"A. Well, what I did was, I actually *didn't search the entire van,* all I did was,

after we got the two of them out of the van and the other backup car came, I just looked into the driver's side, just to see if there was any weapons on the floor, and the only thing that I could see was the bag that was just sitting up there in plain view right in between the seats there.

"Q. Was there anything in the entire van besides a bag in the front seat?

"A. I didn't inventory the van and I didn't tow the van, so I didn't check the rest of it. I just confiscated the bag that I observed and that was it.

"Q. Well, you've testified that they turned around and *they were doing something suspicious in the back, they were reaching behind them doing something suspicious in the back.*

"Did you search the back for a gun?

"A. Excuse me? I looked behind the seats, that was it. You know, what I could when I went to the driver's side, I had a flashlight, *I looked around the seats to see if somebody dumped a gun.*

"Q. Looked in the back for a gun also behind the seats?

"A. No, just, I looked for what I could see.

"***." (Emphasis added. Tr. 44).

At this point, no arrest of these two individuals could have been made and both defendants would have been free to reenter their van and utilize any weapon contained therein against the police officers or others at any time.

The Supreme Court in *Michigan v. Long, supra,* has expanded *Terry* and the line of automobile search cases to allow a limited protective search of a vehicle for the safety of the officer and others before releasing a suspect into that vehicle. This court held in *State v. Borecki* (Apr. 28, 1988), Cuyahoga App. No. 53665, unreported, as follows:

"*** During any investigative detention, the suspect is 'in the control' of the officers in the sense that he 'may be briefly detained against his will ...' *Terry, supra,* at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect *** break away from police control and retrieve a weapon from his automobile. See *United States v. Rainone,* 586 F.2d 1132, 1134 (CA7 1976),

cert. denied, 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 239 (1979). *In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to all weapons inside. United States v. Powless,* 546 F.2d 792, 795-796 (CA8), cert. denied, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977). Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation 'at close range.' *Terry,* 392 U.S., at 24, 88 S.Ct., at 1881, when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger ...' *Id.,* at 28, 88 S.Ct., at 1883. In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." (Emphasis added.) (Footnotes omitted.) *Borecki, supra,* citing *Michigan v. Long, supra,* at 1032, 1051-52.

It can be gleaned from the testimony of Officer Gneu on cross-examination that he was concerned with the safety of himself and his partner and that he knew a weapon could be hidden in the bag located in the front seat of the van where the former occupants would be allowed to re-enter and gain immediate access to such weapon.

Officer Gneu stated on cross-examination as follows:

"Q. [Defense counsel Kurtz] What was your reason for opening the bag?

"A. Well, number one is that a lot of times when you're dealing with people that are dealing drugs, a lot of times they will conceal weapons inside a bag, thinking that somebody's not going to look there, and that was my main reason for picking up the bag, to check that to make sure there wasn't a weapon inside." (Tr. 54).

Whether or not defendants were a threat to the officers at the time they were out of the van is inconsequential. The fact is the defendants would have shortly been free to leave, re-enter the van, gain access to weapons, if any, and use them if they so desired. Upon re-entry of the van, it must also be

remembered, the vehicle itself could be used as a deadly weapon.

The touchstone of analysis of Fourth Amendment rights is the "reasonableness in all circumstances of the particular government intrusion of a citizen's personal security." *Michigan v. Long, supra* at 1051. (Citations omitted.)

The rationale of *Michigan v. Long* is clear. Roadside encounters between police and suspects are extremely hazardous and police officers reasonably have the right to protect themselves from unseen dangers a vehicle may hold by way of possible presence of weapons hidden within. *Id.* at 1049.

It is *unreasonable* to prevent the police from taking reasonable steps to protect their safety. *Id.*; *Chimel v. California* (1969), 395 U.S. 752. Police officers are *not* required to adopt less intrusive means to ensure their safety in order to avoid a protective search during a brief detention. *Id.*[1] Lastly, if an officer discovers contraband other than weapons while conducting a legitimate protective search of the vehicle's interior during an investigative detention, he is not required to ignore the contraband and the Fourth Amendment does not require suppression under such circumstances. *Id.* at 1050.

The two officers in this case were initially investigating suspicious activity of two adult males in a van without assistance of their backup units. Detective Gneu and his partner had their weapons drawn and in a ready position for their own safety when they approached the van. In addition, Detective Gneu testified and articulated his main reason for checking the bag located on the front seat between the passenger and driver side was to check and "make sure there wasn't a weapon inside."

These field officers who were particularly vulnerable to harm should have been reasonably able to rely on the holdings of the Supreme Court to justify the limited passenger compartment search of the van defendants exited before releasing them to reenter and gain access to weapons, if any, located therein. *Michigan v. Long, supra,* at 1052, 1053.

In fact, as the Supreme Court stated in *Terry;* "It would have been poor police work indeed for an officer of '20 years experience' in crime detection and drug transactions in the same or similar neighborhoods to have

'failed to investigate this behavior further.'" See, e.g., *Terry, supra* at 23. As *Terry* so aptly indicates, the Fourth Amendment requires balancing the neutralization of a danger to the policemen in the field against the sanctity of the individual. *Id.* at 24, 25.

A complete and thorough reading of Officer Gneu's testimony reveals the approach of the van was justified since the officer viewed suspicious activity with defendants' "moving around in the front seat bending around and bending back towards the rear of the van." His concern was that "somebody dumped a gun" behind the seats. Officer Gneu's testimony also reveals his activity was prompted by his concern for his and his partner's safety in attempting to discover a weapon. This proposition is best personified by Officer Gneu's own words:

"Q. What was your reason for opening the bag?

"A. Well, number one is that a lot of times when you're dealing with people that are dealing drugs, a lot of times they will conceal weapons inside a bag, thinking that somebody's not going to look there, and that was my main reason for picking up the bag, to check that to make sure there wasn't a weapon inside." (Tr. 54.)

Thus, considering the totality of the facts and circumstances presented and balancing the interests involved in the instant case, the stop of defendants and subsequent limited search of the van for a weapon by Officer Gneu after defendants exited the vehicle and before allowing defendants to re-enter upon their release from the brief stop was "reasonable" pursuant to the Fourth Amendment, *Terry, Michigan v. Long, Bobo, Borecki* and constitutionally permissible. Considering the majority opinion found in answering defendant's second and third assignments of error that the trial court's denial of defendant's Crim. R. 29(A) judgment of acquittal was proper; the trial court's denial of defendant's motion to suppress must be affirmed not only in this case *sub judice* but also in *Chandler.* As stated in the concurring opinion in the case *sub judice,* "[a]s the facts here are exactly the same, the result cannot be otherwise."

Therefore, based upon the above reasoning, I would affirm the trial court's decision denying defendant's motion to suppress.

In defendant's fourth assignment of error which the majority sustained, defendant argued he was erroneously convicted and sentenced for possession of criminal tools, *viz.*, syringes found in a brown bag on the front seat, in violation R.C. 2923.24 a felony of the fourth degree. Defendant argues he should be subjected to only a misdemeanor conviction pursuant to R.C. 2925.12, i.e., possession of drug abuse instruments in the form of syringes. I disagree.

The majority relies on *State v. Volpe* (1988), 38 Ohio St. 3d 191, in support of defendant's argument. I also respectfully dissent from the majority's stance on this proposition since a clear reading of the plain language of the two statutes in question demonstrates they are not irreconcilable. Contra *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, unreported.

In *Volpe, supra* at 193, the Ohio Supreme Court stated as follows:

"Well established principles or statutory construction require that specific statutory provisions prevail over conflicting general statutes. R.C. 1.51 states that:

"'If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is *given to both.* If the conflict between the provisions is *irreconcilable,* the special or local provision prevails as an exception to the general provision, unless the general provision is the later adopted and the manifest intent is that the general provision prevail.'" (Emphasis added.)

R.C. 2923.24 the felony, possession of criminal tools and R.C. 2925.12 the misdemeanor, possession of syringes are *not irreconcilable.*

R.C. 2923.24, Possessing criminal tools, states in pertinent part as follows:

"(A) No person shall possess or have under his control any substance, device, instrument or article, with purpose to *use it criminally.*" (Emphasis added.)

On the other hand, R.C. 2925.12, Possessing drug abuse instruments, states in pertinent part as follows:

"(A) No person shall knowingly make, obtain, possess, or use any instrument, article, or thing whose customary and primary purpose is for the administration or use of a dangerous drug, other than marijuana, when the instrument involved is a *hypodermic or syringe,* whether or not of crude or extempo-

rized manufacture or assembly, and the instrument, article or thing involved has been *used by the offender to unlawfully administer or use a dangerous drug,* other than marijuana, or to *prepare a dangerous drug,* other than marijuana, *for unlawful administration or use."*

The plain language of the specific misdemeanor statute R.C. 2925. 12 states the syringe "has been *used by the offender* to unlawfully administer or use a dangerous drug" \*\*\* "or to prepare" a drug for use or administration.

Obviously, the legislative intent of the specific statute dealing with possession and use of syringes was to separate and lessen the punishment for conduct of an offender who merely personally uses the syringe to prepare or inject his *own* drug from the more opprobrious conducts of a drug pusher or dealer who peddles his wares as well as the criminal tools for their use.

In the case *sub judice,* defendant possessed scores of syringes in a brown paper bag along with drugs *viz.,* cocaine and talwin. Defendant's transparent intent was to sell those syringes as well as the drugs. Thus, defendant possessed a "device, instrument or article, with purpose to use it criminally." R.C. 2923.24.

Defendant was properly convicted, in the case *sub judice.*

I would affirm the trial court's judgment in its entirety.

---

[1] *Michigan v. Long, supra,* suggests the entire passenger compartment search is valid whereas a trunk search is invalid since no immediate access to a weapon would occur. *Id.* at 1054, fn. 17.