JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Anthony Coleman, appeals from the judgment of the Cuyahoga County Court of Common Pleas, entered upon his plea of no contest, finding him guilty of possession of drugs. Appellant contends that the trial court erred in denying his motion to suppress evidence. Finding merit to appellant's appeal, we reverse.
{¶ 2} The record reflects that on October 24, 2000, the Cuyahoga County Grand Jury indicted appellant on one count of drug possession, in an amount less than five grams, in violation of R.C. 2925.11. On December 8, 2000, appellant filed a motion to suppress evidence allegedly obtained as a result of an illegal search and seizure. The trial court held a hearing regarding appellant's motion on April 20, 2001.
{¶ 3} At the hearing, the State presented the testimony of City of Cleveland Police Detective Louis Vertosnik. Detective Vertosnik testified that on May 14, 2000, he and his partners, Detectives Robertson and Santiago, were assigned to the area of Clarkstone and Rosalind Streets in response to multiple complaints from citizens and City of Cleveland council members regarding prostitution activity in the area.
{¶ 4} According to Vertosnik, at approximately 11:00 p.m., as he and his partners were patrolling the area, they noticed a car parked on the side of the road too close to a "Stop" sign. The officers observed an individual slouched down in the passenger seat of the car and as they approached the car, they saw a female's head "pop up from the passenger's side to the driver's side" of the car. According to Vertosnik, the officers then observed "a lot of furtive movement," so they decided to exit their vehicle and walk up to the car to find out what was going on.
{¶ 5} Detective Robertson walked up to the driver's side of the vehicle and Detectives Vertosnik and Santiago walked up to the passenger's side of the car. Vertosnik testified that when he and Detective Santiago walked up to the car, they noticed that the clothing of the occupants was in "disarray" and then observed an open bottle of wine on the passenger side of the car.
{¶ 6} In light of his training and experience as a police officer, Vertosnik concluded that the circumstances were "indicative of prostitution activity." Vertosnik testified that the officers then asked the occupants to exit the car "to pat them down to give them a ticket for the open container in the car." While patting down appellant, Vertosnik felt a three to four-inch object in appellant's right sock which, Vertosnik testified, he immediately recognized as a crack pipe. The officers subsequently discovered other drug paraphernalia in the ashtray of the car and in the female's purse.
{¶ 7} Although Vertosnik testified on direct examination that the purpose of the pat-down was for "officer safety," he admitted on cross-examination that appellant did not say anything threatening or make any threatening motions prior to being ordered out of the car or patted down. Vertosnik testified further that appellant had not committed any crime before he ordered him out of the car:
 {¶ 8} Q. Basically Coleman, who was in the passenger's seat, had committed no crime when you ordered him out of the car, is that correct?
 {¶ 9} A. True, except for the bottle of wine that was in the car.[1]
{¶ 10} The trial court denied appellant's motion to suppress, finding the evidence of suspected prostitution activity in the car was sufficient to allow the officers to order appellant and his companion out of the car and pat them down. Appellant then pled no contest to the indictment and the trial court found him guilty of drug possession in violation of R.C. 2925.11 and sentenced him to one year of community control sanctions. Appellant timely appealed, raising one assignment of error for our review:
 {¶ 11} THE WARRANTLESS SEARCH OF THE APPELLANT VIOLATED THE RIGHTS GUARANTEED BY THE FOURTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 14 AND 16
OF THE OHIO CONSTITUTION IN THAT THE OFFICER IN QUESTION LACKED REASONABLE SUSPICION TO CONDUCT A PAT-DOWN SEARCH.
{¶ 12} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court in Statev. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 13} In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay
(1973), 34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627.
{¶ 14} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause where the officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Andrews (1991), 57 Ohio St.3d 86, quoting Terry,392 U.S. at 21.
{¶ 15} Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v.Williams (1990), 51 Ohio St.3d 58, 60. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. Andrews, 57 Ohio St.3d at 87-88.
{¶ 16} Appellant contends that Detective Vertosnik did not have a reasonable suspicion that he was engaged in criminal activity and, therefore, had no basis for the investigatory stop and subsequent protective search.
{¶ 17} The evidence adduced at the suppression hearing established that Detective Vertosnik and his partners were patrolling the area of Clarkstone and Rosalind Streets on May 14, 2000 in response to multiple complaints of illegal prostitution activity in the area. At approximately 11:00 p.m. that evening, they observed appellant and a female engaged in what appeared to be such illegal activity: appellant was slouched down in a car parked on the side of the road and his female companion's head, at first not visible, popped up from the passenger side of the car over to the driver's side as the officers approached the car. The officers then observed furtive movement by the occupants of the car. Moreover, when the officers walked up to the car, they observed an open bottle of wine on the passenger side of the car and, further, that the clothes of appellant and his companion were in disarray. These "specific and articulable facts," taken together, clearly warranted the inference made by Detective Vertosnik: that the occupants of the car were engaged in illegal prostitution-related activity. Accordingly, on these facts, the initial investigatory stop was warranted.
{¶ 18} Appellant's argument that the trial court should have granted his motion to suppress in light of State v. Ball (1990),72 Ohio App.3d 43, is without merit. In Ball, this court found that "the fact that the appellant was observed sitting in a van, absent other specific facts or circumstances that inferred criminal activity, was not sufficient to warrant the initial investigatory stop." Id. at 47. Here, appellant was not merely sitting in a car when he was stopped; he was slouched down on the seat of the car. Likewise, his female companion was also not merely sitting in the car: only her head became visible to the officers when it "popped up" from the passenger side of the car to the driver's side. Moreover, as noted above, unlike Ball, the officers in this case observed "a lot of furtive movement" by appellant and his companion. Accordingly, contrary to appellant's argument, this case is not like Ball.
{¶ 19} Although we find that the initial investigatory stop was warranted, however, it is apparent that the ensuing pat-down search for weapons was not justified.
{¶ 20} In Pennsylvania v. Mimms (1977), 434 U.S. 106, the United States Supreme Court held that a police officer may order a motorist to get out of a car which has been properly stopped for a traffic violation, even without suspicion of criminal activity. As the Supreme Court of Ohio explained in State v. Evans, 67 Ohio St.3d 405, 407-408,1993-Ohio-186, because the additional intrusion of exiting the vehicle after an initial lawful stop is considered de minimus, "a Mimms order does not have to be justified by any constitutional quantum of suspicion." Id. at 408. Accordingly, we find that the order for appellant to get out of the car, although questionable under these circumstances,[2] was proper.
{¶ 21} The propriety of the officer's subsequent pat-down search for weapons is governed by Terry v. Ohio (1968), 392 U.S. 1. UnderTerry, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *. Id. at 24.
{¶ 22} As the Ohio Supreme Court stated in Evans, "A Mimms order does not automatically bestow upon the police officer the authority to conduct a pat-down search for weapons." Id. at 409. Rather,
 {¶ 23} in analyzing the ensuing Terry frisk, the question we must ask is whether, based upon the totality of the circumstances, the officers had a reasonable, objective basis for frisking defendant after ordering him out of the car. See State v. Andrews (1991), 57 Ohio St.3d 86. "The touchstone of our analysis under the Fourth Amendment is always `the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"
{¶ 24} Id., quoting Mimms, 434 U.S. at 108-109, quoting Terry,392 U.S. at 19.
{¶ 25} Here, there is no evidence in the record which indicates that the officers had an objectively reasonable belief that appellant or his companion were armed or presently dangerous. Although Detective Vertosnik testified that the purpose of the pat-down was for "officer safety," he also testified that appellant did not say or do anything threatening before he was ordered out of the car or before Vertosnik patted him down.
{¶ 26} Moreover, under these circumstances, there was no reason to believe that appellant would likely be armed. Although the totality of the circumstances justifying the initial stop indicated that appellant and his companion were possibly engaged in prostitution-related activity, there is no rational basis for assuming that someone engaged in such activity is likely to be armed and dangerous. Furthermore, Detective Vertosnik testified that the officers ordered appellant and his companion out of the car in order to ticket them for violating R.C. 4301.62, the "open container" statute.[3] There is similarly no rational basis for assuming that someone is armed and dangerous simply because he or she has an open container of alcohol in his or her car. Thus, although the right to frisk may be "virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed," Evans, 67 Ohio St.3d at 405, that right was not automatic under the circumstances of this case.
{¶ 27} Finally, there is no evidence that the officers intended to put appellant in the rear of their cruiser while they conducted further investigation — a reason that arguably may have justified a protective pat-down search for weapons under these circumstances — nor is there any evidence that the officers intended to arrest appellant for violating the open container law — another reason that would have justified a protective pat-down. Indeed, absent a list of enumerated factors, which are not at issue in this case, a police officer is mandated to issue a citation, rather than arrest the perpetrator of a minor misdemeanor. State v. Thompson (1996), 116 Ohio App.3d 740, 743;State v. Johns, 90 Ohio App.3d at 458-459; R.C. 2935.26.
{¶ 28} In short, there is no evidence that the officers in this case were aware of any specific facts which suggested they were in danger. Rather, it appears that they frisked appellant simply because they asked him to get out of the car while they wrote him a ticket for a minor misdemeanor. Without an objectively reasonable belief that appellant was armed and dangerous, however, the warrantless frisk was not justified.
{¶ 29} Accordingly, the trial court erred in denying appellant's motion to suppress. Moreover, absent the fruits of the unconstitutional search, there was insufficient evidence to convict appellant of possession of drugs. Appellant's assignment of error is therefore sustained. Appellant's conviction is vacated and he is hereby discharged.
Conviction vacated and defendant discharged.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Apparently the officers determined that appellant and his companion were not, in fact, engaged in prostitution-related activity.
[2] There appears to have been no need under these circumstances to remove appellant from the car. Vertosnik testified that there was sufficient light from the street lights to observe the occupants of the car. Moreover, there is no evidence that the officers considered appellant or his companion to be a threat while they were in their car. Furthermore, Vertosnik testified that the officers merely intended to write appellant and his companion a ticket for violating the "open container" law, something which could easily have been done by one of the three officers while the other two officers watched the occupants of the car.
[3] R.C. 4301.62 provides, in pertinent part, that "No person shall have in the person's possession an opened container of beer or intoxicating liquor * * * while operating or being a passenger in or on a motor vehicle on any street, highway, or other public or private property open to the public for purposes of vehicular travel or parking." Violation of the open container law is a minor misdemeanor. State v. Johns (1993),90 Ohio App.3d 456.
 JAMES D. SWEENEY, J. CONCURS. MICHAEL J. CORRIGAN, J. DISSENTS (SeeSeparate Opinion).