OPINION
{¶ 1} Defendant-Appellant, Emanuel L. Shoulders, appeals a Hancock County Court of Common Pleas judgment, sentencing Shoulders to three years incarceration for his conviction for possession of cocaine. On appeal, Shoulders contends that the trial court erred in denying his motion to suppress evidence obtained during, and as the result of, the warrantless search and seizure of his person and the automobile that he was driving, as well as any and all testimony pertaining to the traffic stop by members of the Findlay Police Department. Upon review, we are unable to find that the trial court abused its discretion or erred as a matter of law. Accordingly, the judgment of the trial court is affirmed.
 {¶ 2} In May of 2004, Police Patrolman Byron Deeter was working the midnight shift with the Patrol Division of the Findlay Police Department. At the beginning of his shift, Patrolman Deeter received information from Detective Chris Huber of the Metrich Drug Task Force that a gray Ford with Seneca County license plates had been seen in Findlay, Ohio with two black males inside the vehicle. Detective Huber also informed Patrolman Deeter that these two men were reported to have been selling crack cocaine and were possibly in possession of firearms. Finally, Detective Huber informed Patrolman Deeter that the two men may have been associating with Mary Murphy, who Patrolman Deeter knew from prior complaints as a seller and user of crack cocaine, and who Patrolman Deeter knew resided in the Argyle Building in Findlay, Ohio.
 {¶ 3} While responding to another police call the night of the traffic stop, Patrolman Deeter observed a gray Ford with two black males occupying the vehicle. Patrolman Deeter ran the gray Ford's license plate number and found that the license plates were registered in Seneca County.
 {¶ 4} Later that night, after completing the police call, Patrolman Deeter observed the gray Ford unoccupied and parked behind the Argyle Building. Patrolman Deeter then began surveillance on the vehicle. While on surveillance, Patrolman Deeter observed three people leave the Argyle Building, enter the gray Ford with Seneca County license plates, and leave the parking lot.
 {¶ 5} After leaving the parking lot, the gray Ford approached South Cory Street, a one-way street for northbound traffic only, from an alley. After signaling left, the gray Ford began to turn left, or the wrong way, onto South Cory Street. The gray Ford then turned right and headed northbound, the proper direction, on the one-way street. Based upon the information from Detective Huber and the observed travel pattern of the gray Ford, Patrolman Deeter initiated a traffic stop.
 {¶ 6} After stopping the vehicle, Patrolman Deeter found Shoulders operating the vehicle. Patrolman Deeter then removed Shoulders from the gray Ford and searched him for suspected firearms. After being removed from the vehicle, Shoulders orally consented to a search of the gray Ford, during which crack cocaine was found. Shoulders claimed the crack cocaine belonged to Mary Murphy, another passenger in the motor vehicle. Later during the search, Sergeant Young of the Findlay Police Department found additional crack cocaine on the person of Shoulders after Shoulders attempted to flee the scene of the motor vehicle stop.
 {¶ 7} In May of 2004, a Hancock County Grand Jury indicted Shoulders for one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the third degree. In October of 2004, Shoulders moved to suppress the State's evidence, arguing that the evidence was illegally obtained through a warrantless search and seizure. Specifically, Shoulders asserted that there was no probable cause or reasonable suspicion for the initial stop and detention of Shoulders.
 {¶ 8} In November of 2004, a hearing was held on Shoulders' motion to suppress. At the hearing, Patrolman Deeter was the only person who testified to the above events. Following the hearing, the trial court found that Patrolman Deeter had a reasonable suspicion that Shoulders, the person who was stopped, was involved in illegal activity, including the commencement of a traffic offense and that Shoulders gave Patrolman Deeter consent to search the vehicle. As a result, the trial court denied Shoulders' motion to suppress.
 {¶ 9} In January of 2005, Shoulders withdrew his plea of not guilty and plead no contest to the sole count of the indictment. The trial court went on to sentence Shoulders upon his conviction. It is from this judgment Shoulders appeals, presenting the following assignment of error for our review:
IN AN ABUSE OF ITS DISCRETION, THE TRIAL COURT REVERSIBLY ERRED BYOVERRULING DEFENDANT'S MOTION TO SUPPRESS, IN VIOLATION OFDEFENDANT-APPELLANT'S FUNDAMENTAL SUBSTANTIAL CONSTITUTIONAL RIGHT TO BESECURE FROM WARRANTLESS, UNREASONABLE SEARCHES AND SEIZURES, UNDER THEFOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ANDUNDER SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION, AND ALSO INVIOLATION OF DEFENDANT-APPEALLANT'S FUNDAMENTAL SUBSTANTIAL RIGHT TO DUEPROCESS OF LAW, UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATESCONSTITUTION.
 {¶ 10} In his sole assignment of error, Shoulders contends that the trial court erred in denying his motion to suppress the evidence obtained during the traffic stop.
 {¶ 11} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v. Martinez (11th Cir. 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Carter (1995), 72 Ohio St.3d 545, 552. Thus, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "Accepting those facts as true, [the reviewing court] must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Villiage of McComb v. Andrews, 3d Dist. No. 5-99-41, 2000-Ohio-1663 citing Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657; State v. Anderson (1995),100 Ohio App.3d 688, 691. An appellate court reviews the trial court's application of the law de novo. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 12} When a police officer stops a motor vehicle and detains its occupants, he has "seized" it and its occupants within the meaning of theFourth Amendment to the United States Constitution. Terry v. Ohio
(1968), 392 U.S. 1, 8 9; Berkemer v. McCarty (1984), 468 U.S. 420;United States v. Mendenhall (1980), 446 U.S. 544, 556-57 (opinion of Stewart J.); Delaware v. Prouse (1979), 440 U.S. 648. The Fourth
Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Therefore, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkinsv. United States (1960), 364 U.S. 206, 222.
 {¶ 13} The law governing investigative stops of automobiles is clear. The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. Terry, 392 U.S. at 20-21;State v. Andrews (1991), 57 Ohio St.3d 86, 87. Before stopping a vehicle, a law enforcement officer must have reasonable suspicion, based on specific and articulable facts that an occupant is or has been engaged in criminal activity. See Terry, 392 U.S. at 21; Prouse, 440 U.S. 648;State v. Ball (1991), 72 Ohio App.3d 43, 46 citing Adams v. Williams
(1972), 407 U.S. 143. Thus, if the specific and articulable facts indicate to the officer that the driver of an automobile may be committing a criminal act, then the officer can justifiably make an investigative stop. State v. Carlson (1995), 102 Ohio App.3d 585, 593;State v. Cole (Sept. 13, 1995), 3d. Dist. No. 16-94-11. Also, in a situation where an officer has observed a traffic violation, the stop is constitutionally valid. City of Dayton v. Erickson (1996), 76 Ohio St.3d 3,9; State v. Evans (1993), 67 Ohio St.3d 405, certiorari denied (1993),510 U.S. 1166. Finally, the reasonableness of a traffic stop does not depend on the motive of the police officer making the stop. Whren v.U.S. (1996), 517 U.S. 806, 813. With these principles in mind, we turn to the issue raised by the parties in their briefs.
 {¶ 14} Our inquiry in the case sub judice therefore begins and ends with a consideration of whether Patrolman Deeter had reasonable suspicion, based on specific and articulable facts, that an occupant in the vehicle driven by Shoulders may be committing a criminal act, including but not limited to a violation of a traffic law.
 {¶ 15} When a vehicle appears to be turning the wrong way down a one-way street without justification, at least one section of the Ohio Revised Code and the Codified Ordinances of the City of Findlay Ohio are ostensibly implicated.
 {¶ 16} R.C. 4511.32 ("One-way highways and rotary traffic islands") provides in pertinent part:
The department of transportation may designate any highway or anyseparate roadway under its jurisdiction for one-way traffic and shallerect appropriate signs giving notice thereof.
 Upon a roadway designated and posted with signs for one-way traffic avehicle shall be driven only in the direction designated.
Additionally, Sections 305.12 ("One-way streets and alleys") and 331.30(a) ("One-way streets and rotary traffic islands") of the Codified Ordinances of the City of Findlay Ohio are analogous to this section of the Code.
 {¶ 17} In the present case, following a thorough review of the record herein, we find that the trial court's conclusion that while within the city limits of Findlay, Ohio, the vehicle operated by Shoulders was driven the wrong way on a one-way street was supported by competent, credible evidence. Furthermore, Patrolman Deeter clearly had a reasonable suspicion, based on specific and articulable facts that an occupant in the vehicle operated by Shoulders was or had been engaging in criminal activity. That is, Patrolman Deeter could have reasonably suspected that the driver of the vehicle was attempting to turn the wrong way on a one-way street. Consequently, Patrolman Deeter was constitutionally permitted to make a brief stop of the vehicle operated by Shoulders in order to investigate and determine the cause of the possible infractions.
 {¶ 18} Finding that Patrolman Deeter had a reasonable suspicion based on specific and articulable facts to initiate a traffic stop on the gray Ford driven by Shoulders, we overrule the sole assignment of error.
 {¶ 19} Accordingly, having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Cupp, P.J., and Bryant, J., concur.