OPINION
{¶ 1} Defendant-appellant Matthew Bartimus appeals the judgment entered against him in the Western Division of the Belmont County Court. Bartimus was convicted of obstructing official business, a violation of R.C. 2921.31(A). Bartimus specifically alleges two errors. First, Bartimus argues that his constitutional right to counsel was denied due to the ineffective assistance of counsel at trial. Second, Bartimus claims that the conviction was against the manifest weight of the evidence. We find his arguments unpersuasive. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Bartimus' driver's license and driving privileges were suspended at the time of the incident that gave rise to this appeal. On February 10, 2002, Barnesville Police Officer Paul Warrick observed a vehicle traveling down a street. He knew that Bartimus was known to drive this vehicle. Officer Warrick believed that Bartimus' driver's license was suspended. Therefore, Officer Warrick passed the car then turned around. When Officer Warrick passed the car again it was pulled off of the road with the headlights turned off. Officer Warrick turned around, and came back towards the vehicle for a third time. At this time, Bartimus was outside of the car. At no time did the officer observe Bartimus driving the car.
 {¶ 3} When Officer Warrick asked Bartimus what was wrong, he responded that the car broke down and his friend went to call someone. Officer Warrick asked Bartimus if he was driving the car. Bartimus responded that his friend, John Jones, was the driver. Bartimus said that Jones pulled over and went to a nearby residence to use the phone. Officer Warrick and Bartimus waited for a period of time for Jones to return, after which Bartimus speculated that the friend had gone elsewhere to use the phone. Bartimus also provided Warrick with an address for Jones. Bartimus further stated that Jones probably did not come back because he saw a police officer there and was scared, since the two men had been drinking. Since Jones, the alleged driver, had not returned, Officer Warrick grew even further suspicious that Bartimus was in all actuality the driver.
 {¶ 4} Believing that Bartimus' driver's license had been suspended, Officer Warrick asked Bartimus for his social security number to confirm or deny his belief. Bartimus provided Officer Warrick with a social security number, which Officer Warrick then relayed back to the police dispatcher. The dispatcher responded that the social security number belonged to a valid driver. While it is unclear, it appears that the dispatcher referred only to the last name of the person with that assigned social security number, which the officer recognized as belonging to Bartimus.
 {¶ 5} Since the dispatcher's information meant that even if Bartimus had been driving, no violations had occurred, Officer Warrick had the car towed and drove Bartimus to a pay phone to call for a ride. Upon returning to the police station, Officer Warrick told another officer who had recently dealt with Bartimus about the latest incident. It was determined that the social security number Bartimus had given to Officer Warrick did not belong to Bartimus, but was that of Bartimus' brother.
 {¶ 6} As a result, Bartimus was charged with and arrested for falsification, a violation of R.C. 2921.13(A)(3). Before the commencement of trial, the state moved to amend the charge to obstruction of official business in violation of R.C. 2921.31(A), a second-degree misdemeanor.
 {¶ 7} The trial court found Bartimus guilty of violating R.C.2921.31(A). He was sentenced to 90 days in jail with 60 days suspended on the conditions that he pay costs of $70 and complete supervised probation for 2 years. From this judgment, Bartimus timely appeals.
 ASSIGNMENT OF ERROR NO. ONE {¶ 8} "Defendant was denied his constitutional right to representation at all stages of the criminal proceedings by receiving ineffective assistance of counsel."
 {¶ 9} Bartimus contends that he was denied effective assistance of counsel. There is a two prong test to determine if counsel was ineffective. Strickland v. Washington (1984), 466 U.S 668, 686; State v.Reynolds (1998), 80 Ohio St.3d 670, 674. The first prong requires the defendant to show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. Strickland,466 U.S. at 687; State v. Sallie (1998), 81 Ohio St.3d 673, 674; State v.Hlinovsky, 7th Dist. No. 99 BA 65, 2001-Ohio-3247. The second prong requires the defendant to show that counsel's error was so serious as to deprive the defendant of a fair trial or a reasonable probability that the result of the trial would be different. Strickland, 466 U.S. at 687;Sallie, 81 OhioSt.3d at 674.
 {¶ 10} The judicial scrutiny of counsel's conduct must be highly deferential. State v. Carter (1995), 72 Ohio St.3d 545, 558. The court of appeals presumes that counsel's conduct falls within the wide range of reasonable professional assistance. State v. Thompson (1987),33 Ohio St.3d 1, 10. A reviewing court will not second guess the strategic decisions made by trial counsel. Carter, 72 Ohio St.3d at 558. Nor will trial counsel's failure to file a motion to suppress automatically constitute ineffective assistance of counsel. State v.Madrigal (2000), 87 Ohio St.3d 378, 389. Rather, the party claiming ineffective assistance of counsel must show the failure to file such a motion caused him prejudice. State v. Proctor (May 14, 2001), 12th Dist. Nos. CA2000-06-059, CA2000-08-068, CA2000-08-078, citing State v.Robinson (1996), 108 Ohio App.3d 428, 433.
 {¶ 11} Bartimus claims that trial counsel should have filed a motion to suppress Officer Warrick's statements and testimony for lack of probable cause. He argues that there was no evidence introduced that Officer Warrick had probable cause to stop or investigate Bartimus, and further that Officer Warrick did not see Bartimus driving the vehicle. Any "reasonable attorney," Bartimus argues, would have filed a motion to suppress under such facts.
 {¶ 12} We are not persuaded that the failure to file such a motion equates to ineffective legal counsel. A police officer may make a brief, warrantless, investigatory stop without probable cause when the officer has a reasonable suspicion that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1; Delaware v. Prouse
(1979), 440 U.S. 648; State v. Ball (1991), 72 Ohio App.3d 43, 46, citingAdams v. Williams (1972), 407 U.S. 143. Reasonable suspicion means that the investigating officer must be able to point to specific, articulable facts that, when coupled with any rational inferences that may be drawn from those facts, warrant the investigation. Terry, supra; Delaware, supra; Ball, supra.
 {¶ 13} In the instant case, the facts on the record support the existence of reasonable suspicion on the part of Officer Warrick. He observed a vehicle that Bartimus was known to drive traveling down the street. Officer Warrick believed Bartimus' license was suspended. The next time he saw the car, it was pulled over with the headlights turned off, and Bartimus was standing outside of the vehicle. (Tr. 24). When Officer Warrick approached the already stopped vehicle, he was reasonably suspicious that Bartimus had been driving, as there was no one else there. Regardless of any suspicions the officer may have had regarding the driver, it is not extraordinary for a police car to approach a stranded motorist to assist. When Officer Warrick approached the vehicle the headlights were off and the hood was popped open. (Tr. 23). Police officers, without reasonable suspicion of criminal activity, are allowed to intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. State v. Norman (1999),136 Ohio App.3d 46.
 {¶ 14} Viewed in the totality of the circumstances, Officer Warrick had a reasonable suspicion that a criminal act had occurred (i.e. driving under suspension) and/or he was carrying out his community caretaking function by helping a stranded motorist. For either of those reasons, it was not unreasonable for trial counsel to fail to file a motion to suppress since either of those reasons would permit the testimony of the officer.
 {¶ 15} Accordingly, Bartimus has failed to prove by a reasonable probability that the outcome of his trial would have been different had a motion to suppress been filed by his legal counsel. As stated above, such a motion would have been meritless. Therefore, Bartimus was not prejudiced by his trial counsel's failure to file a meritless motion. The Sixth Amendment right to counsel does not require that counsel file a meritless motion simply to avoid an allegation of ineffective assistance. Proctor, supra, citing Robinson, supra.
 {¶ 16} Bartimus failed to prove both prongs of the Strickland
test. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NO. TWO {¶ 17} "The court erred in finding the defendant guilty against the manifest weight of the evidence."
 {¶ 18} When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 390. An appellate court will not second-guess a determination of weight or credibility made by the trial court. State v.Shue (1994), 97 Ohio App.3d 459, 466. When a question of manifest weight comes down to two fairly reasonable views of the evidence, both of which are believable, it is not within the province of the appellate court to reverse. State v. Gore (1999), 131 Ohio App.3d 197, 201. Rather, it is only in the exceptional case where the evidence weighs heavily against the conviction and it is clear that the trier of fact lost its way while resolving conflicts in the evidence that the appellate court has the discretion to grant a new trial. Martin, 20 Ohio App.3d at 175.
 {¶ 19} Bartimus was charged under R.C. 2921.31(A), which reads:
 {¶ 20} "No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 21} As such, the state was required to prove that Bartimus purposely gave Officer Warrick the wrong social security number, thereby hampering or impeding Officer Warrick's investigation of determining whether Bartimus was driving under a suspended license.
 {¶ 22} Some elements of a crime, unless the defendant confesses to them, can only be proven by circumstantial evidence. State v. Hankerson
(1982), 70 Ohio St.2d 87, 92, citing State v. Graven (1978),54 Ohio St.2d 114. One such element in this case is Bartimus' mindset when he gave the social security number to Officer Warrick. Because it cannot be proven directly, the trier of fact must instead look to the surrounding circumstances to infer whether Bartimus acted purposefully in giving the wrong social security number. Circumstantial evidence can be used to establish purpose. Shue, 97 Ohio App.3d at 466, citing State v.Nicely (1988), 39 Ohio St.3d 147.
 {¶ 23} Both Bartimus and Officer Warrick testified at the trial. Officer Warrick testified that Bartimus was standing outside of a broken down car that he was known to drive, Bartimus' friend who was supposed to be driving was never seen, the story about where the friend was changed at one point in time, and Bartimus provided an incorrect address for the friend. The alleged driver never corroborated the story at the time of the incident or at trial. Additionally, when asked by Officer Warrick for his social security number, Bartimus gave the incorrect number, his brother's number.
 {¶ 24} Bartimus testified that the driver, Jones, went for help when the car broke down, and that Jones probably never returned because the police were there. Additionally, Bartimus testified that he gave his brother's social security number due in part to his familiarity with the number and due in part to his nervousness. Bartimus also argues that, even if Bartimus did intentionally provide Officer Warrick with the wrong social security number, it could not have obstructed Officer Warrick's investigation in any way. According to Bartimus, the social security number in no way affected that separate investigation of who drove the car.
 {¶ 25} Given this testimony there are two reasonable conclusions: that Bartimus purposely gave the wrong social security number; or that Bartimus made a mistake. The trier of fact is best able to view the demeanor, voice inflections and gestures of a witness that will aid in determining who is telling the truth. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Since the trier of fact concluded that Bartimus purposely gave the incorrect social security number, we will not disturb it on the ground that another conclusion is also reasonable.
 {¶ 26} Furthermore, this action did impede an investigation. Officer Warrick was attempting to determine who was driving the car. Officer Warrick believed that Bartimus was the driver, and he further believed that Bartimus had a suspended driver's license. Use of the wrong social security number allowed Officer Warrick to believe that Bartimus' license was not suspended. Therefore, Officer Warrick discontinued his investigation because the question of who was driving was no longer relevant. Even if Bartimus was driving, given the information he was provided with, Bartimus was a valid driver and no criminal activity was occurring. Had Bartimus given Officer Warrick his own social security number, Officer Warrick would have continued to investigate who was driving, and might possibly have arrested Bartimus at that time for driving with a suspended license. As such, the judgment is not against the manifest weight of the evidence and this assignment of error lacks merit.
 {¶ 27} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Donofrio and Waite, JJ., concur.