OPINION
{¶ 1} Defendant-appellant Robert R. Moore appeals from his conviction in Mahoning County Court No. 5 for following too close, a violation of R.C. 4511.34; reckless operation, a violation of R.C. 4511.20; marked lanes, a violation of R.C. 4511.33; and driving under the influence, a violation of R.C. 4511.19. Appellant raises a number of issues in this appeal. First, this court must decide whether the officer had a reasonable, articulable suspicion to stop appellant. Next, whether there was probable cause to arrest appellant for DUI. Third, whether the inventory search of the vehicle was proper. Fourth, whether the trial court erred when it failed to set forth the factual findings supporting its decision to deny the motion to suppress. Lastly, this court must decide whether the trial court denied appellant the right to a jury trial. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On July 23, 1997, at approximately 2:30 a.m. Officer Moore noticed a truck driving erratically down Woodworth Road. (4/27/99 Tr. 14). He stated that the vehicle was veering left of center crossing the double yellow lines by more than half of the truck and also swerving all the way off the right hand side of the road. (4/27/99 Tr. 14, 15). He also explained that the truck was following the car in front of it too closely, i.e. there was less than 20 feet between the truck and the car. (4/27/99 Tr. 15).
 {¶ 3} Given all of these observations, the officer stopped the car to see what was the matter. (Tr. 17). Officer Moore "immediately was able to smell an odor of alcoholic beverage" when he got to appellant's truck window. (4/27/99 Tr. 18). He also noted that appellant had bloodshot glassy eyes. (4/27/99 Tr. 18). The officer asked to see appellant's driver's license and vehicle registration. (4/27/99 Tr.18). Appellant fumbled with the paperwork and was confused as to why he was stopped. (4/27/99 Tr. 18).
 {¶ 4} Officer Moore then asked appellant to exit the vehicle so that field sobriety tests could be administered. (4/27/99 Tr. 19). The first test that was given was the portable breath test (PBT). (4/27/99 Tr. 19). The PBT indicated that appellant had a breath alcohol content of .08. (4/27/99 Tr. 20).[1] Officer Moore then proceeded to administer the finger to nose test, one-leg stand test, and the walk and turn test. (4/27/99 Tr. 20-23). All three tests indicated that appellant was impaired. (4/27/99 Tr. 24).
 {¶ 5} Appellant was then arrested and placed in the police cruiser. An inventory search was performed on his vehicle prior to it being towed. (4/27/99 Tr. 24). During the inventory search, marijuana and rolling papers were seized. (4/27/99 Tr. 26). Appellant was then transported to the station where he refused to submit to the BAC DataMaster breath test. (4/27/99 Tr. 26-27).
 {¶ 6} Appellant was charged with driving under the influence in violation of R.C. 4511.191(A)(1); following too closely in violation of R.C. 4511.34; marked lanes in violation of R.C. 4511.33; failure to a wear seat belt in violation of R.C. 4513.263; possession of drug abuse paraphernalia in violation of R.C. 2925.14(C)(1); and drug abuse-marijuana in violation of R.C. 2925.11(A). Appellant filed a motion to suppress on November 7, 1997, and a supplemental suppression motion on June 15, 1998. The suppression hearing was held in April 1999. Due to a family emergency for one of the attorneys, the hearing was recessed and continued for a later date. The hearing did not resume until October 2000. The court took the matter under advisement and later, on April 13, 2001, denied the motion to suppress. On May 8, 2002, appellant entered a no contest plea on the charges of reckless operation, following too close, marked lanes, and driving under the influence. The seat belt, drug paraphernalia and drug charges were dismissed. The trial court found him guilty of reckless operation, following too close, marked lanes and driving under the influence. Appellant appeals raising five assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} "The trial court erred as a matter of law in denying defendant-appellant's motion to suppress because there was insufficient evidence in the record to support a finding that there was probable cause to stop him for operating a motor vehicle while under the influence of alcohol."
 {¶ 8} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. The trial court assumes the role of the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting Statev. Venham (1994), 96 Ohio App.3d 649, 653. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416.
 {¶ 9} It is well settled that before stopping a vehicle, a law enforcement officer must have reasonable suspicion, based on specific and articulable facts that an occupant is or has been engaged in criminal activity. See Terry v. Ohio (1968), 392 U.S. 1; Delaware v. Prouse
(1979), 440 U.S. 648; State v. Ball (1991), 72 Ohio App.3d 43, 46, citingAdams v. Williams (1972), 407 U.S. 143. Because the "reasonable suspicion" needed to initiate a Terry stop is a less demanding standard than probable cause, reasonable suspicion "can arise from information that is less reliable than that required to show probable cause." Alabamav. White (1990), 496 U.S. 325, 330.
 {¶ 10} Appellant's argument is that there were no articulable facts or circumstances that created a reasonable suspicion that he was or had violated any law at the time of the stop. His argument really addresses the credibility of Officer Moore's testimony.
 {¶ 11} From the record it is clear that there are two different versions of the events that happened on the morning of July 23, 1997; there is appellant's version and Officer Moore's version. Officer Moore testified that appellant was driving erratically, crossing both the double yellow lines and the edge line swerving all the way off the road on the right hand side. (4/27/99 Tr. 14-15). Furthermore, he testified that appellant was following the vehicle in front of him too closely, less than 20 feet separated them. (4/27/99 Tr. 15). Officer Moore testified that given the state of appellant's driving, he had safety concerns for others on the road. (4/27/99 Tr. 16).
 {¶ 12} Appellant testified that he was "driving absolutely perfectly fine," that he was not weaving, swerving or speeding. (10/19/00 Tr. 172). He also stated that he was not following the vehicle in front of him closely. (10/19/00 Tr. 173). He explained that a car driving erratically and at a high rate of speed came up behind him with its bright lights on. (10/19/00 Tr. 173). This car he was describing turned out to be a police cruiser. (10/19/00 Tr. 173). Appellant contends that his testimony that Officer Moore had to drive at a high rate of speed to catch up to him shows that Officer Moore could not have observed appellant following the vehicle in front of him too closely.
 {¶ 13} Given that there are two polar opposite versions of the events on the night of July 23, 1997, the trial court had to believe one or the other. Since the court found a reasonable, articulable suspicion for the stop and did not suppress the evidence that was obtained from the stop, it is clear that the court believed Officer Moore's testimony. Thus, this is a credibility question. As stated above, we defer to the trial court's decision on credibility of a witness as long as it is supported by competent credible evidence. From the testimony, there is no indication that Officer Moore's testimony was not competent or credible. Despite trial counsel's repeated attempts to discredit and/or impeach Officer Moore, his testimony was consistent and apparently in the trial court's view believable. The trial court occupies the best position from which to view the credibility of the witnesses. See Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Thus, we defer to the trial court's factual findings.
 {¶ 14} Furthermore, Officer Moore's observations were sufficient to establish a reasonable, articulable suspicion for the stop. Officer Moore's testimony established that appellant's vehicle swerved off the roadway and crossed the centerline. This act violated R.C. 4511.25. Officer Moore also stated that he observed appellant following the vehicle in front of him too closely. This violated R.C. 4511.34. Violation of traffic offenses creates a reasonable suspicion of criminal activity and, thus, the stop is permitted. State v. Wetshtein (Nov. 4, 1998), 9th Dist. No. 19014. Moreover, the description of the erratic driving, swerving repeatedly over the centerline and going off the right hand side of the road was sufficient to establish a reasonable articulable suspicion. State v. Lane (Mar. 11, 1998), 4th Dist. No. 97CA47. Thus, based upon the above, there was a reasonable articulable suspicion to stop appellant's vehicle. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 15} "There was no probable cause to arrest the defendant-appellant for DUI."
 {¶ 16} When determining whether a police officer had probable cause to arrest an individual for DUI, a court considers whether, at the moment of arrest, the officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212, citingBeck v. Ohio (1964), 379 U.S. 89, 91; State v. Downen (Jan. 12, 2000), 7th Dist. No. 97BA53. In making this determination, a court reviews the totality of facts and circumstances surrounding the arrest. Homan,89 Ohio St.3d at 427.
 {¶ 17} Appellant argues that the results of field sobriety tests were not administered in strict compliance with the National Highway Traffic Safety Administration (NHTSA) established procedures. Thus, according to him, those results cannot be considered when reviewing the totality of the circumstances. He also contends that the PBT could not serve as probable cause to arrest. Appellant argues that without the field sobriety tests and the PBT there was no evidence to establish probable cause for the arrest. The state contends that even without the results of these tests, sufficient evidence existed to establish probable cause for the arrest.
 {¶ 18} The state's contention is correct. Regardless of whether the field sobriety tests and the PBT are considered, when considering the totality of the circumstances probable cause existed for the arrest. "While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where * * * the test results must be excluded for lack of strict compliance." Id. at 427. "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." Id.
 {¶ 19} At the time of the arrest, Officer Moore had observed appellant having difficulty with his paperwork. (4/27/99 Tr. 18). The lack of coordination is an indication of being under the influence and that one's ability to operate a motor vehicle is affected. State v. Littleton, 5th Dist. No. 01CA30, 2002-Ohio-2521. Furthermore, Officer Moore stated that appellant had glassy, bloodshot eyes and an odor of alcohol emanating from him. Both of these factors provide sufficient evidence of intoxication.State v. Gray (Apr. 19, 2001), 3d Dist. No. 11-2000-16, 2001-Ohio-2349. The officer also observed appellant's erratic driving, i.e. being unable to keep his vehicle in the marked lane. This is also evidence of impairment. State v. Stuble, 11th Dist. No. 2000-L-082, 2001-Ohio-8820. The accumulated observations of the officer, without considering the field sobriety tests or the PBT, sufficiently establish probable cause for the DUI arrest.
 {¶ 20} Furthermore, this case is similar to the Homan case. In Homan,
the Supreme Court found that probable cause existed for the arrest where the officer observed the erratic driving, saw the driver had red, glassy eyes, smelled alcohol on the driver's breath and the driver admitted to having consumed alcohol. Homan, 89 Ohio St.3d at 427. The only difference in this matter is that appellant did not admit to having consumed alcohol. Despite this difference, it was reasonable for the officer, given his observations, to conclude that appellant was driving under the influence. Thus, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 21} "The inventory search of the vehicle was not conducted pursuant to a valid arrest or an established departmental policy."
 {¶ 22} Appellant argues the inventory search that was performed on his vehicle violated both the Ohio and United States Constitutions against illegal searches and seizures. He contends that the marijuana and rolling papers were found as a result of this illegal search and thus should have been suppressed.
 {¶ 23} The merits of this assignment of error will not be addressed. The alleged illegal search of the vehicle produced marijuana and rolling papers. The charges that related to this evidence were possession of drugs and drug paraphernalia. The record shows that these charges were dismissed. All other charges that he pled to had nothing to do with evidence obtained in this alleged illegal search; the DUI charge was focused on impairment by alcohol, not by marijuana abuse. As such, there is no controversy at issue. State ex rel. Ohio Assn. of Public SchoolEmployees v. Rootstown Local School Dist. Bd. of Edn. (June 25, 1999), 11th Dist No. 98-P-0057 (explaining that if there is not actual controversy the appeal is moot); Johnson v. Bureau of Motor Vehicles
(Dec. 19, 1991), 8th Dist. No. 59375 (stating "[a]ctions become moot when resolution of the issues presented are purely academic and will have no practical effect on the legal relations between the parties"). Thus, we decline from addressing the merits of this assignment of error as it would be completely advisory in nature. Logsdon v. Boulais, 12th Dist. No. CA2001-03-028, 2001-Ohio-8689, citing Miner v. Witt (1910),82 Ohio St. 237, 238 (stating that an appellate court is not required to render an advisory opinion to rule on a question of law that cannot affect matters at issue in a case); State v. Bistricky (1990),51 Ohio St.3d 157, 158.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 24} "The trial court committed reversible error when it failed to state its factual findings for denying the motion to suppress evidence on the record pursuant to the Ohio rules of Criminal Procedure."
 {¶ 25} Appellant contends that the trial court's journal entry denying the motion to suppress was not adequate. He maintains that the journal entry did not state the essential factual findings on the record. Also, he states that the journal entry uses the wrong legal standard to determine whether the officer was justified in initiating the traffic stop. The state rebuts these arguments by stating that any alleged deficiencies in the journal entry do not constitute reversible error since a complete record is available for our court to review the issues.
 {¶ 26} Crim.R. 12 provides that where factual findings are involved in determining a motion, the trial court should state such findings on the record. In the case sub judice, the trial court did not issue such findings, however, its failure to do so does not rise to the level of reversible error. State v. Boone (Mar. 10, 1994), 8th Dist. No. 64924. Despite appellant's contention that he requested findings of fact, the record is devoid of any indication of this request. Consequently, it appears appellant has waived the issue with respect to this appeal. Id;State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 47 (stating that failing to invoke the rule, Crim.R. 12(F), forfeits any error).
 {¶ 27} Moreover, the failure to state findings of fact does not hamper our review of the issues raised in this appeal and thus the error (if it was not waived) did not result in prejudice to appellant. State v.Almalik (1987), 41 Ohio App.3d 101, 105. The two-volume transcript adequately goes through the facts initiating the stop and the facts supporting the arrest. As a result, we are able to review the trial court's decision regarding the motion to suppress.
 {¶ 28} Also, under this assignment of error, appellant claims that the trial court's journal entry states the wrong standard used to determine whether the stop was valid. The journal entry specifically states, "[b]ased upon Dayton v. Erickson, the police officer had probable cause to make the arrest." The language in this sentence is correct. Probable cause is the standard used for an arrest, while articulable suspicion is the standard used for initiating a stop. However, Dayton v. Erickson
(1996), 76 Ohio St.3d 3, discusses the standard used to initiate a stop, not to make an arrest. That opinion discusses both the reasonable articulable suspicion standard and probable cause. However, even if the trial court was using the probable cause standard for determining whether the stop was proper, it did not amount to prejudicial error. A reasonable articulable suspicion is a lower standard than probable cause. Thus, having probable cause means that there is a reasonable articulable suspicion. As such, even if the probable cause standard was erroneously used, it would not affect the outcome. Thus, there was no prejudice to appellant. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 29} "The trial court violated defendant-appellant's right to a jury trial by failing to have a jury pool assembled on the scheduled trial date and sua sponte continuing the trial for several days."
 {¶ 30} Appellant argues that prejudicial error occurred when on the date of his trial, May 6, 2002, a jury pool was not assembled which caused his trial to be postponed until May 9, 2002, three days later. In making this argument, appellant references the length of time it took his case to go to trial, in his estimation over three years. Appellant cites to R.C. 2945.17 and Crim.R. 23 in support of his argument. This statute and rule state that a defendant has a right to a trial by a jury.
 {¶ 31} Due to the charges involved, it is undisputed that appellant had the right to a jury trial. The record discloses that the May 6, 2002 jury trial was postponed until May 9, 2002. The no contest plea was entered into on May 8, 2002. The record is devoid of any indication as to why this postponement of three days occurred. In the absence of a complete record, we must presume the regularity of the trial court's proceedings. State v. Pringle, 3d Dist. No. 2-03-12, 2003-Ohio-4235, at ¶ 10, citing Sugar Creek Twp. Bd. of Trustees v. Crawford, 3d Dist. No. 1-01-130, 2002-Ohio-2082, quoting Burrell v. Kassicieh (1998),128 Ohio App.3d 226, 232. Thus, without more in the record, we are unable to find that appellant was deprived of his right to a jury trial. Rather, he waived it by entering into a plea agreement. Thus, this argument lacks merit.
 {¶ 32} However, we do note that it took the county court an inordinate amount of time to dispose of this DUI case. As stated above, the DUI occurred in July 1997 and the trial was not scheduled to occur until May 2002. This is almost five years after the citation occurred. The majority of this time was spent on disposing of the suppression issue. The suppression hearing began in April 1999, but due to an emergency, had to be continued. It was not continued until October 2000 and the decision was not rendered until April 2001. However, despite this length of time, appellant makes no argument concerning speedy trial. Regardless, even if he did he would not prevail on the issue since a valid waiver was executed in 1997 and he never reasserted his right to a speedy trial.
 {¶ 33} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., concurs.
[1] In 1997 the legal limit was .1, not .08.