[Cite as *State v. Flenniken*, 2024-Ohio-5041.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DOMINICK FLENNIKEN,

Defendant-Appellant.

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 HA 0003**

Criminal Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CRI 2023-0083

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

**JUDGMENT:**
Sentence Vacated and Remanded.

*Atty. Lauren E. Knight,* Harrison County Prosecutor, for Plaintiff-Appellee and

*Atty. Brian A. Smith,* for Defendant-Appellant.

Dated: October 18, 2024

**DICKEY, J.**

{¶1} Appellant, Dominick Flenniken, appeals his conviction and sentence following his entry of a guilty plea in the Harrison County Court of Common Pleas to two counts of endangering children in violation of R.C. 2919.22(B)(2) and R.C. 2919.22(B)(3), respectively, felonies of the third degree. Appellant advances five assignments of error. First, Appellant contends the trial court abused its discretion when it overruled his presentence motion to withdraw his plea. Second, he argues the trial court abused its discretion when it overruled his motion for new counsel. Appellant's third, fourth, and fifth assignments of error are predicated upon the trial court's alleged error at sentencing, where it failed to: (1) state on the record or memorialize in the judgment of conviction that Appellant's convictions were merged for the purpose of sentencing; and (2) identify the conviction for which he was sentenced. For the following reasons, Appellant's guilty verdicts are affirmed, but his sentence is vacated and this matter is remanded to the trial court for a de novo sentencing hearing.

## FACTS AND PROCEDURAL HISTORY

{¶2} On October 6, 2023, Appellant was indicted for two counts of endangering children, to which he ultimately pleaded guilty. Count one alleges on or about September 27, 2023, Appellant tortured or cruelly abused A.F. (DOB 12/05/2019), Appellant's then three-year old son. Count two alleges on or about September 27, 2023, Appellant administered corporal punishment or other physical disciplinary measure, or physically restrained A.F., in a cruel manner or for a prolonged period, which punishment, discipline, or restraint was excessive under the circumstances, and created a substantial risk of serious physical harm to A.F.

{¶3} On November 13, 2023, Appellant sent pro se handwritten correspondence to the trial court. The correspondence reads in its entirety:

> This is Dominick Flenniken case number CRI 2023-0083. I wish to fire [the public defender] because I feel like he is not representing me properly in this trial. I went 35 days before I've meet [sic] him in the Juvenile Court November 2nd of 2023. When I went to talk to him about everything

he kinda [sic] blew me off.  The previous case number is 2023 3023.  I've tried calling both of his numbers [telephone numbers redacted]. This started on September 29, 2023 when I received the paperwork.

{¶4}  In a judgment entry filed on November 22, 2023, the trial court acknowledged the receipt of the pro se correspondence, which the trial court characterized as a motion for new counsel.  According to the judgment entry, the trial court addressed the motion at a pretrial conference conducted on November 20, 2023 and the motion was overruled.  There is no transcript of the November 20, 2023 pretrial in the record.

{¶5}  On December 19, 2023, Appellant entered guilty pleas to both counts of child endangerment.  The written plea agreement did not contain any provision regarding allied offenses of similar import and did not contain an agreed sentence.  At the hearing, the trial court referred to a previous hearing during which a plea offer was proposed by the state, and Appellant was given additional time to consider the offer.  However, there is no transcript of the previous hearing in the record.

{¶6}  During the plea colloquy, the trial court provided the following information regarding the maximum penalty that could be imposed on each count:

THE COURT:  You understand that the possible penalties for Count One, endangering children, is [sic] 9, 12, 18, 24, 30 or 36 months at the Ohio Department of Rehabilitation and Corrections and a fine of up to $10,000.00.

[APPELLANT]:  Yes, Your Honor.

THE COURT:  And there's two counts, correct?

[PROSECUTOR]:  Correct, Your Honor, but they would merge for –

THE COURT:  Right. And the second count, endangering children, is also a felony of the third degree.  It would have the same penalties.  However, even if you are found guilty of both of those charges I can only sentence on one.  I

> have to pick one or the other to sentence you on because they are allied offenses of similar import. You understand that?

[APPELLANT]: Yes, Your Honor.

(12/19/23 Change of Plea Hrg., p. 5-6.)

**{¶7}** The trial court reiterated several times throughout the hearing that Appellant was entering guilty pleas to two crimes, but could be sentenced for only one. For instance, the trial court stated, "[a]nd once again, even though I'm going to accept your plea and find you guilty, I can only go forward to sentence you on one of these charges because they are charged in the alternative to each other." (*Id.* at ¶ 12.) The judgment entry memorializing the plea contains no reference to an agreed sentence or merger.

**{¶8}** On January 10, 2024, prior to sentencing, Appellant sent pro se handwritten correspondence to the trial court. The correspondence reads, in its entirety:

> I (Dominick Flenniken) would like to retract my plea agreement to case CRI 2023-0083. I also would like to fire [the public defender] as well because I feel like he will and was not representing me properly in this trial and I feel like he is biased against me. He told me multiple times that I should've never moved into Harrison County. I also wasn't in the right mind when I took my plea agreement because of everything [the public defender] told me that Friday he came down to visit me.

**{¶9}** At a hearing conducted on January 23, 2024, the trial court recognized the pro se correspondence and characterized it as both a motion to withdraw plea and for new counsel. At the hearing, the public defender orally moved to withdraw as counsel and the trial court sustained the motion. The judgment entry memorializing the January 23, 2024 hearing reads, in relevant part, "[t]he Court shall appoint new counsel to represent the Defendant on Motion to Vacate Plea only." There is no transcript of the January 23, 2024 hearing in the record.

{¶10} On March 5, 2024, the trial court conducted a hearing on Appellant's motion to withdraw plea. Appellant was represented by new counsel. The trial court cautioned Appellant that any testimony he provided regarding the motion could be used against him at trial. The trial court further cautioned Appellant that he was waiving his attorney/client privilege with respect to the public defender, who could be called by the state to rebut Appellant's testimony at the hearing.

{¶11} Appellant acknowledged the waiver of his Fifth Amendment right as well as his attorney/client privilege as it related to the public defender, prior to providing the following testimony:

> [The public defender] told me the Judge was biased against people like me which I'm assuming was child endangerment or anything that's child related cases. . . . [T]he way I took it was that if I would've taken it to trial the Judge was going to max me out because [the public defender] said [the trial court] was biased.
>
> . . .
>
> [The public defender] told me multiple times I should've never moved into Harrison County, multiple occasions. . . . I told him that I corrected my kid it just seemed like it didn't matter to him.

(3/5/24 Hrg. On Mot. To Withdraw Plea Tr., p. 7-8.) Appellant interpreted the foregoing statements to mean the Harrison County criminal justice system is corrupt.

{¶12} Defense counsel asked Appellant, "what did you tell [the public defender] that you did?" Appellant responded, "I opened [sic] handedly – I say pop but I popped my [three-year old] kid in the mouth open handedly." (*Id.*) Appellant used a hand gesture to animate the term "popped." (*Id.* at 17.)

{¶13} Appellant explained he believed he was charged with punching his son in the face. Appellant testified the public defender "really didn't talk about [his] case. [The public defender] just assumed [Appellant] was guilty because [he] was wearing orange." (*Id.* at 9.)

Case No. 24 HA 0003

{¶14} Appellant further testified the public defender told Appellant to "shut the fuck up" at their first meeting, which was the reason he sent the original pro se handwritten correspondence. Appellant testified "[he did not] feel like [the public defender] was representing [him] properly in this case. Like [the public defender] didn't ask [Appellant] if [Appellant] had any witnesses to talk on [Appellant's] behalf or anything like that to try to prove [Appellant's] innocence . . . ." (*Id.* at 11-12.)

{¶15} On cross-examination, Appellant conceded the public defender never explicitly stated the trial court would impose the maximum sentence if Appellant went to trial, but instead, there was a "good chance" the maximum penalty would be imposed. (*Id.* at 17.) Appellant further testified the public defender "made it seem like that was the only thing to do, to plead guilty . . . ." (*Id.* at 18.) Appellant explained that "[he had] never been in trouble like this before so [he did not] quite know any of the rules and regulations that everything goes with like this." (*Id.*)

{¶16} Next, Appellant's stepfather testified on his son's behalf. A.F. was placed in the custody of Appellant's mother and stepfather after Appellant was arrested. Appellant's stepfather testified he had photographs of A.F. taken by a hospital technician when he was at the emergency room after the alleged assault, and the photographs demonstrate the child had no discernable injuries, but for preexisting marks from hand, foot, and mouth disease.

{¶17} Appellant's stepfather further testified he told the public defender about the photographs at a pretrial conference, but the public defender refused to look at the photographs. According to Appellant's stepfather, the public defender told him that Appellant had admitted to law enforcement that Appellant "might've got [sic] a little rough with [A.F.]," so he did not need the photographs. (*Id.* at 22-23.)

{¶18} Defense counsel offered the photographs into evidence at the hearing on the motion to withdraw plea but the trial court refused to admit them because they were not "offered for the truth of the matter asserted." (*Id.* at 22.) The trial court reasoned, "I think it's irrelevant what they are or what they show because that – if in fact [Appellant is] successful in his motion then that would still be something that the court would have to look at and rule on at trial." (*Id.*) Appellant's stepfather testified his impression of the

photographs was "they would tend to indicate that if [Appellant] did strike [the] child it wasn't that hard." (*Id.*)

**{¶19}** The public defender testified on behalf of the state. Prior to offering testimony, the public defender was informed Appellant had waived his attorney/client privilege. The state asked the public defender if he told Appellant that the trial court was biased against him. The public defender responded, "is that a direct quote or is that paraphrasing[,] or is that the implication?" The state replied the question was intended to represent an actual quote from the public defender. The public defender testified, "I did not say those words to [Appellant]." (*Id.* at 26-27.) The public defender likewise denied telling Appellant the trial court was biased against "people like" Appellant or that the trial court was biased in general.

**{¶20}** The state asked the public defender if he told Appellant that the trial court would impose the maximum sentence if Appellant went to trial. The public defender again asked, "Are these direct quotes . . . ?" The state responded, "[s]ome of them are implications from something you said." The public defender replied, "I would not have said those words. I would've explained the sentences available to him." (*Id.* at 27.)

**{¶21}** However, the public defender conceded he told Appellant that he should not have moved to Harrison County. The public defender explained:

> Based on the way this case played out, based upon the series of events, based upon how law enforcement responded so quickly, based upon what was provided in discovery in this case, the implication was that . . . if this happened somewhere else it might not have been investigated the way it was investigated here.

(*Id.* at 28.)

**{¶22}** After an off-the-record conversation with counsel, the trial court informed the public defender, "these questions that are being asked of you will only be on things that you directly said to [Appellant]." (*Id.*) The public defender denied explicitly informing Appellant he could not get a fair trial, the trial court had a personal bias against him, he had to enter a plea, and that the public defender would not represent Appellant if he

proceeded to trial. However, the public defender could not recall whether he told Appellant the public defender was Appellant's "best option Attorney-wise." (*Id.* at 29.)

**{¶23}** Finally, the public defender provided the following explanation for his refusal to view the photographs:

> [Appellant] was in County Court. He was charged with an F2, probably improperly but he was. By the time it got to grand jury came back as an F3. When we appeared for arraignment his father spoke to me in the hallway. He wanted to hand me some things. I explained to him that relax, it's not the F2. It came back as a F3. I'd not yet been appointed to [Appellant] so I was not formally his counsel. I told him to hold on to those items and it was my understanding --
>
> Here's (inaudible) -- if you're an experienced attorney you don't let people hand you things in the hallway, especially if you're not appointed yet. And secondly, if someone just hands me something in the hallway then I'm going to be subject to reciprocal discovery. So I'm aware of the situation but did I tell [Appellant's stepfather] to hold onto those? Yeah. Did I tell him also that the indictment was an F3 and not an F2, harm rather than serious physical harm, yes.

(*Id.* at 30.)

**{¶24}** The public defender conceded on cross-examination that he never asked to see the photographs after he was appointed. He testified he received photographs of A.F. in the emergency room from the state during discovery.

**{¶25}** On March 12, 2024, the trial court denied the motion to withdraw guilty plea. At the sentencing hearing on March 28, 2024, a victim coordinator read the victim impact statement of A.F.'s mother. She described Appellant as emotionally cruel and physically violent toward A.F.

**{¶26}** Defense counsel argued in favor of the imposition of less than the "agreed sentence" of thirty months with judicial release after twelve months. As previously stated,

there is no evidence of an agreed sentence in the plea hearing transcript or in the written plea agreement.

**{¶27}** During his allocution, Appellant, age 22, explained that A.F.'s mother "gave [Appellant] residential custody" when A.F. was fourteen days old. The trial court convicted Appellant of both crimes of endangering children and imposed a thirty-month prison sentence. The state indicated it would not object to a motion for judicial release after a period of twelve months of incarceration, and the state would recommend that Appellant complete the program at Eastern Ohio Correction Center as a part of his community control.

**{¶28}** The state did not choose which allied offense of similar import would remain after merger and the trial court did not merge the convictions at the sentencing hearing. Further, the judgment of conviction contains no merger language. The judgment of conviction reads, in relevant part:

> For the offense of TWO COUNTS: ENDANGERING CHILDREN, contrary to and in violation of Section 2919.22(B)(2) and (E)(3), a Felony of the Third Degree, and ENDANGERING CHILDREN, contrary to and in violation of Section 2919.22(B)(3) and (E)(3), a Felony of the Third Degree, Defendant shall serve a term of 30 months incarceration under the supervision of the Ohio Department of Rehabilitation and Corrections.

(3/28/24 J.E., p. 4.)

**{¶29}** This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO VACATE GUILTY PLEA.**

**{¶30}** "A presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Jones*, 2020-Ohio-3578, ¶ 11 (7th Dist.), citing *State v. Xie*, 62

Ohio St.3d 521, 527 (1992). "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Jones*, supra, at ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261, 264 (1997), paragraph two of the syllabus. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie* at paragraph one of the syllabus.

{¶31} "An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable." *State v. North*, 2020-Ohio-6846, ¶ 12 (7th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). While it is insufficient to show we would have reached a different result, an abuse of discretion means an error in judgment resulting in a decision that is "unreasonable based upon the record." *State v. Chapman*, 2020-Ohio-5589, ¶ 5 (7th Dist.).

{¶32} We have adopted a non-exclusive list of factors first announced in *State v. Fish*, 104 Ohio App.3d 236 (1st Dist.1995), to be weighed in reviewing a decision on a presentence plea withdrawal motion: (1) the representation provided by defense counsel; (2) the defendant's understanding of the nature of the charges and the potential sentence; (3) the extent of the plea hearing; (4) the extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) the reasons for the motion; (7) whether the accused was perhaps not guilty or had a complete defense to the charge; (8) whether the timing of the motion was reasonable; and (9) whether the state will be prejudiced by the withdrawal. *State v. Grabe*, 2020-Ohio-4435, ¶ 15 (7th Dist.).

{¶33} In the judgment entry overruling the motion to withdraw plea, the trial court opined Appellant was adequately represented at all stages of the trial. The trial court further opined both the plea hearing and the hearing on the motion to withdraw plea were thorough and complete, and the motion was filed within a reasonable time after the plea hearing. Next, the trial court observed the public defender's failure to view the photographs was not evidence of poor representation, as "[n]othing indicates that information would not be considered if a plea deal was not reached." (3/12/24 J.E., p. 2.)

The trial court further acknowledged Appellant's innocence was not an issue as he conceded to striking A.F. at the hearing. Finally, the trial court broadly reasoned "prejudice is apparent in that by granting a motion to vacate a guilty plea the [s]tate would be in a position where plea agreements are rendered useless; as any Defendant with buyer's remorse simply need file a motion to vacate plea to engage in further negotiations or trial." (*Id.*)

{¶34} Our review of the first factor, the representation provided by defense counsel, is foreclosed in large measure by the absence of a transcript of the hearing on Appellant's original motion for new counsel in the record. Moreover, credibility determinations are the province of the trial court. The trial court in this case appears to have credited the testimony of the public defender regarding his pre-plea conversations with Appellant.

{¶35} The second factor, Appellant's understanding of the nature of the charges and the potential sentence, is difficult to analyze given the trial court's failure to merge the guilty pleas and convict Appellant of one crime. If it was the result of an oversight by the trial court and the state, then Appellant cannot argue he did not understand the charges and potential sentence. If the failure to merge the guilty pleas was intentional, then Appellant could argue he was misled regarding the number of convictions that would result from his plea. However, any argument predicated upon Appellant's sentence would have to be challenged in a post-sentence motion to withdraw the plea.

{¶36} The extent of the hearings held by the trial court support the trial court's decision to overrule the motion to withdraw plea. Moreover, the trial court correctly concluded Appellant did not assert that he did not touch A.F. or had a complete defense to the charges, given his admission at the hearing that he "popped" A.F.

{¶37} Nonetheless, we agree with Appellant that the trial court incorrectly analyzed the prejudice factor in this case. There was no argument advanced by the state that it suffered any prejudice as a result of roughly one-month delay in proceedings that would result from the withdrawal of the plea. At oral argument, the state conceded that it was not prejudiced. According to the trial court, granting any motion to withdraw plea would prejudice the state by encouraging every defendant to negotiate a plea in bad faith knowing he could withdraw it. To the contrary, the trial court's analysis of the prejudice

factor should have focused exclusively on the state's case against Appellant. While the trial court misapplied the prejudice factor, the remaining factors support the trial court's decision overruling the presentence motion to withdraw plea.

**{¶38}** Having reviewed the factors, we find the trial court did not abuse its discretion when it overruled Appellant's presentence motion to withdraw plea. We further find Appellant's first assignment of error has no merit.

<u>**ASSIGNMENT OF ERROR NO. 2**</u>

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S NOVEMBER 13, 2023 MOTION FOR NEW COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**{¶39}** "An indigent defendant has the right to professionally competent, effective representation, not the right to have a particular attorney represent him." *State v. Brown*, 2014-Ohio-4420, ¶ 5 (7th Dist.). Accordingly, an indigent defendant must demonstrate "good cause to warrant substitution of counsel, which contemplates a breakdown in the attorney-client relationship of such severity as to jeopardize the defendant's right to effective assistance of counsel." *Id.* citing *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. Examples of good cause are "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *Id.* at ¶ 5. "[O]nly in the most extreme of circumstances should appointed counsel be substituted." *Id.* "Moreover, the defendant bears the burden of demonstrating grounds that substitute counsel is warranted." *Id.* We review a trial court's decision to deny a substitution of counsel and require a trial to proceed with the assigned counsel for abuse of discretion. *State v. Cowans,* 87 Ohio St.3d 68, 73 (1999).

**{¶40}** "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict

between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.' " *Brown, supra*, at ¶ 7, citing *State v. Jones*, 91 Ohio St.3d 335, 342 (2001).

**{¶41}** Appellant specifically challenges the trial court's denial of his pre-plea motion for new counsel. The motion was addressed at a pretrial conference on November 20, 2023 and overruled in a judgment entry issued on November 22, 2023. The transcript of the November 20, 2023 hearing is not in the record. In the absence of a complete record, we must presume the regularity of the trial court's proceedings. *State v. Moore*, 2004-Ohio-3203, ¶ 31 (7th Dist.) Thus, without more in the record, we find Appellant has not demonstrated grounds that substitute counsel was warranted. Accordingly, we further find Appellant's second assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

**APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY MADE, BECAUSE THE TRIAL COURT FAILED TO ADVISE APPELLANT OF THE "MAXIMUM PENALTY INVOLVED" UNDER CRIM.R. 11(C)(2)(a), BY TELLING APPELLANT, DURING THE PLEA COLLOQUY, THAT COUNTS ONE AND TWO WOULD MERGE FOR PURPOSES OF SENTENCING AS ALLIED OFFENSES OF SIMILAR IMPORT, UNDER R.C. 2941.25, AND THEN PROCEEDING TO SENTENCE APPELLANT ON BOTH COUNTS ONE AND TWO.**

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT'S SENTENCE WAS CONTRARY TO LAW FOR SENTENCING APPELLANT ON "TWO COUNTS" OF ENDANGERING CHILDREN, WITHOUT PROPERLY MERGING THE TWO COUNTS AS ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25.**

## ASSIGNMENT OF ERROR NO. 5

**THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW FOR IMPOSING A PRISON SENTENCE ON "TWO COUNTS" OF ENDANGERING CHILDREN, WITHOUT SPECIFYING "THE FACT OF CONVICTION AND THE SENTENCE" FOR EACH COUNT, AS REQUIRED UNDER CRIM.R. 32(C).**

**{¶42}** Pursuant to R.C. 2941.25:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

According to the Ohio Supreme Court, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts are to evaluate three separate factors: (1) the conduct; (2) the animus; and (3) the import. *State v. Ruff*, 2015-Ohio-995, at paragraph one of the syllabus.

**{¶43}** For purposes of merger, the state chooses which of the allied offenses to pursue at sentencing. *State v. T.D.J.*, 2018-Ohio-2766, ¶ 62 (7th Dist.), citing *State v. Brown*, 2008-Ohio-4569, ¶ 16, 43. Once the state makes its election, the trial court must accept the state's choice and merge the crimes into a single conviction for sentencing purposes. *T.D.J.* at ¶62, citing *Brown* at ¶ 42.

**{¶44}** When a defendant fails to raise the issue of allied offenses of similar import in the trial court, the accused waives all but plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 3. Plain error is not reversible error unless it is shown to have affected the outcome of

the proceeding and a manifest miscarriage of justice has occurred which warrants reversal. *Id.* The defendant must show a reasonable probability that the convictions are, in fact, allied offenses of similar import, committed with the same conduct and without separate animus. *Id.*

{¶45} Unable to determine from the record whether the trial court's failure to merge the two child endangering convictions at the sentencing hearing was an oversight or a conscious decision, Appellant advances three assignments of error to address both possibilities:  First, Appellant's plea was not knowing, intelligent, and voluntary based on the trial court's representation at the plea hearing that the endangering children guilty verdicts would merge at sentencing, thereby subjecting him to a greater potential maximum sentence.

{¶46} Second, assuming the trial court's failure to merge the endangering children guilty verdicts was intentional, the endangering children guilty verdicts were allied offense of similar import that should have been merged at sentencing. Because the merits of the issue were not addressed due to the trial court's representations at the plea hearing, there is insufficient evidence in the record to conclude the endangering children guilty verdicts were allied offenses of similar import. However, the observations of the state and the trial court at the plea hearing and the state's representations at the oral argument suggest the guilty verdicts should have merged.

{¶47} Third, assuming the trial court's failure to merge the endangering children guilty verdicts at the sentencing hearing was intentional, and did not constitute error, the trial court failed to mete out the independent sentences for the two separate crimes with specificity.  Appellant argues that a specific sentence for each crime (possibly two thirty-month concurrent sentences, or two fifteen-month consecutive sentences) cannot be determined from the record.

{¶48} With respect to the plea, the state argues "[b]oth the state and [defense counsel] acknowledged [at the sentencing hearing that] the agreed sentence was thirty months at the Ohio Department of Rehabilitation and Correction, with the state agreeing to not object to judicial release after a term of twelve months had been served." (Appellee's Brf., p. 7.)  The state contends Appellant cannot argue his plea was not voluntary, intelligent and knowing because he was fully aware of the sentence that was

imposed. However, the agreed sentence was not made a part of the record at the plea hearing nor memorialized in the plea agreement, and Appellant was informed that he would be convicted of only one crime during the plea colloquy, rather than two. The state also relies on the agreed sentence to assert that Appellant's sentence is not contrary to law. However, the state concedes, "[i]f this Court finds that the trial court ordering one sentence without specifically enumerating the merger of the two counts, the remedy would be remand to the trial court for resentencing." (*Id.*, p. 9.)

{¶49} In Ohio, a "conviction" consists of a guilty verdict and the imposition of a sentence or penalty. *State v. Whitfield*, 2010-Ohio-2, ¶ 12. In other words, a defendant is not "convicted" for purposes of R.C. 2941.25(A) until the sentence is imposed. *Id.* at ¶ 24. "If . . . a court of appeals finds reversible error in the imposition of multiple punishments for allied offenses, the court must reverse the judgment of conviction and remand for a new sentencing hearing at which the state must elect which allied offense it will pursue against the defendant." *Id.* at ¶ 25.

{¶50} Here, the state failed to choose the allied offense of similar import for which Appellant was sentenced. Moreover, the trial court at both the sentencing hearing and in the judgment of conviction failed to make a determination regarding the merger of the two crimes, despite informing Appellant several times at the plea hearing that he would only be convicted (guilty verdict plus sentence) for one crime.

{¶51} "When the plea agreement is silent on the issue of allied offenses of similar import[,] the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense; if a trial court fails to merge allied offenses of similar import, the defendant has the right to appeal the sentence." *State v. Underwood*, 2010-Ohio-1, ¶ 29. The Supreme Court of Ohio has indicated that the failure to merge allied offenses of similar import constitutes plain error. *Id.* at ¶ 31. The Court further indicated that "[a] defendant's plea to multiple counts does not affect the court's duty to merge those allied counts at sentencing. This duty is mandatory, not discretionary." *Id.* at ¶ 26.

{¶52} Accordingly, we vacate the sentencing entry and remand the matter to the trial court for a de novo sentencing hearing. The new sentencing hearing will provide Appellant with the opportunity to argue in favor of merger, thereby preserving the issue

for appeal, in the event the trial court concludes the two charges are not allied offenses of similar import. Appellant will also have the opportunity to challenge the validity of his plea should the trial court find the guilty verdicts do not merge.

## CONCLUSION

{¶53} In summary, we find the trial court did not abuse its discretion when it overruled Appellant's pre-sentencing motion to withdraw plea and his original motion for new counsel. However, the trial court failed to address the merger issue at the sentencing hearing. Therefore, we vacate Appellant's sentence and remand this matter for a de novo sentencing hearing.

Waite, J., concurs.

Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that Appellant's sentence is vacated. We hereby remand this matter to the Court of Common Pleas of Harrison County, Ohio, for a de novo sentencing hearing. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**